# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ALPERT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-CV-3774 |
| | § | |
| MARK R. RILEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiffs, Robert Alpert and his sons, Roman Alpert and Daniel Alpert (appearing through Daniel Alpert's mother, Renee Picazo, his next friend and guardian), have sued three sets of defendants. The first set is Mark R. Riley and his former legal assistant, Dixie G. Meynier. Riley is a lawyer and an accountant who worked for Alpert and entities that he owned or controlled from June 1994 to October 1998. The second set of defendants, the "Accountant Defendants," consists of Lolley & Fontenot, P.C. and its principals, R. Lance Lolley, and Bobby L. Fontenot. Riley hired the Accountant Defendants to provide outside accounting services to Alpert and entities that he owned or controlled, including three trusts that Alpert established for Roman and Daniel Alpert in 1990 and 1996. The third set of defendants, the "Lawyer Defendants," consists of two lawyers retained by Riley, Robert Scardino and Scot Courtney. They represented Riley in 1999 in connection with an agreement with the IRS to provide information about Alpert and his finances, including the

three trusts Alpert established for his sons.

In the original complaint the plaintiffs filed on September 28, 2004 and in the amended complaint filed on February 4, 2005, the primary focus was on Riley's actions with respect to the three trusts that Alpert had established:  the 1990 Roman Alpert Trust (RAT) and Daniel Alpert Trust (DAT), and the Robert Alpert 1996 Children's Trust (the "Children's Trust) (together, the "Trusts").  On September 9, 2005, this court stayed this federal lawsuit because Riley and Alpert were litigating many of the same issues in a Texas probate court case styled *In re: The Roman Merker and Daniel James Alpert Trust (Mark Riley v. Robert Alpert)*, consolidated with *In re: The Robert Alpert 1996 Children's Trust (Dennis Proctor v. Mark Riley and Lolley & Fontenot P.C.)*.[1]

In the probate court case, the judge resolved a number of claims on summary judgment, held a jury trial on the remaining claims in 2005, and entered final judgment in Riley's favor on March 28, 2006.  The final judgment established that Alpert had breached his duty to the Trusts and beneficiaries by engaging in certain stock transactions between December 1993 and September 1996 that constituted improper self-dealing.  The final judgment also established that Riley was the properly appointed trustee of the three Trusts and had not breached any fiduciary duty he owed to the trusts.  The final judgment expressly approved the accountings that Riley had filed for the three Trusts from their inception to June 8, 2005, the date of the jury verdict.  The final judgment also dismissed the counterclaims

---

[1]Cause No. 305,232-401 consolidated with Cause No. 323,013.

Alpert had asserted against "Mark Riley, individually and as Trustee."

After the state court case was resolved, the stay in this case was lifted and the three sets of defendants filed motions for summary judgment. The motions are primarily based on the preclusive effect of the state probate court proceedings and judgment. (Docket Entry Nos. 90, 93, 94). The plaintiffs responded to these motions, (Docket Entry Nos. 98, 99), and the defendants replied, (Docket Entry No. 101, 103, and 105). Acknowledging that some of the issues raised in this case were precluded by the state court suit, on September 28, 2006, the plaintiffs filed a second amended complaint. (Docket Entry No. 110). The defendants supplemented their motions for summary judgment, (Docket Entry Nos. 114, 116, 117, 118), to which the plaintiffs responded, (Docket Entry No. 125), and the Accountant Defendants replied, (Docket Entry No. 126).

Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court grants the Accountant Defendants' motion for summary judgment and grants in part and denies in part the remaining motions for summary judgment. This court dismisses the causes of action asserted in the plaintiffs' second amended complaint insofar as they are based on, arise from, or relate to, the handling of the three Trusts that were the subject of the probate court litigation and judgment, through June 8, 2005. The remaining causes of action are those based on the defendants' alleged actions relating to Alpert's finances and businesses other than the DAT, RAT, and Children's Trust, and those based on actions relating to the Trusts occurring after June 8, 2005. This court also dismisses the cause of action arising under the Internal Revenue Code, 26 U.S.C. §§ 6103 and 7431,

3

as to all defendants.  Finally, with respect to the RICO and fraud claims, this court orders the plaintiffs to amend to comply with the applicable pleading requirements no later than April 20, 2007.  The reasons for these rulings are set out in detail below.

## I.    Background

### A.    The Summary Judgment Evidence

The parties have submitted excerpts from the state probate court transcripts, including portions of transcripts for March 11, 2004,[2] May 16, 2005,[3] May 25, 2005,[4] and June 2, 2005 hearings[5] and a June 6, 2005 transcript of trial proceedings.[6]  The parties have also submitted pleadings from the state probate court, including Plaintiff's (Riley's) Third Amended Petition,[7] Roman Alpert's Plea in Intervention,[8] Roman and Daniel Alpert's Second Amended Petition in Intervention,[9] Robert Alpert's Third-Party Petition,[10] Robert Alpert, Danro Corp. and others' First Amended Petition for Removal of Purported Trustee (Riley),[11]

---

[2]Docket Entry No. 93, Ex. H.

[3]Docket Entry No. 95, Ex. 5; Docket Entry No. 98, Ex. B.

[4]Docket Entry No. 93, Ex. I.

[5]Docket Entry No. 95, Ex. 6.

[6]Docket Entry No. 93, Ex. M; Docket Entry No. 95, Ex. 8.

[7]Docket Entry No. 93, Ex. C.

[8]Docket Entry No. 31, Ex. D.

[9]Docket Entry No. 93, Ex. E; Docket Entry No. 95, Ex. 3.

[10]Docket Entry No. 93, Ex. D.

[11]Docket Entry No. 93. Ex. F; Docket Entry No. 95, Ex. 4.

Robert Alpert, Danro, and others's Sixth Amended Counterclaim,[12] Robert Alpert and others'

Opposition to Plaintiff's Six Motions for Partial Summary Judgment,[13] the final judgment,[14]

the jury charge,[15] and excerpts from transcripts of testimony.[16]

The parties also submitted a supplemental affidavit by Robert Alpert,[17] to which is

attached a copy of allegations made by Riley that Alpert had violated income tax reporting

requirements.[18]  The record also contains a transcript[19] and CD[20] for a message from Riley

left on Alpert's telephone.  The record also contains a January 22, 2001 federal grand jury

subpoena to Bobby Fontenot and Lance Lolley[21] and excerpts from the depositions of

Lolley[22] and Fontenot.[23]  The parties have also submitted the engagement letter between

---

[12]Docket Entry No. 93, Ex. G.

[13]Docket Entry No. 93, Ex. J.

[14]Docket Entry No. 87, Ex. A; Docket Entry No. 93, Ex. A; Docket Entry No. 95, Ex. 1; Docket Entry No. 103, Ex. A.

[15]Docket Entry No. 93, Ex. B; Docket Entry No. 95, Ex. 2.

[16]Docket Entry No. 93, Ex. L; Docket Entry No. 103. Ex. B.

[17]Docket Entry No. 98, Ex. A; Docket Entry No. 124.

[18]Docket Entry No. 124, Ex. 1, 2.

[19]Docket Entry No. 98, Ex. A-2.

[20]Docket Entry No. 98, Ex. A-1.

[21]Docket Entry No. 117, Ex. 1

[22]Docket Entry No. 117, Ex. 2.

[23]Docket Entry No. 117, Ex. 3.

Alpert and Lolley & Fontenot,[24] and an unsigned IRS confidential informant agreement with Scardino and Courtney's names as agents for the informant.[25]

### B.     The Allegations in the Second Amended Complaint and the Summary Judgment Evidence

The second amended complaint contains allegations about the defendants' actions with respect to the three Trusts Alpert created for his sons Roman Alpert and Daniel Alpert, the RAT, DAT, and the Children's Trust.  The second amended complaint also contains allegations about the defendants' actions with respect to Robert Alpert's finances and business entities that he owned or controlled, unrelated to the Trusts.

In June 1994, Alpert hired Mark Riley, who is both a lawyer and accountant, to serve as executive vice-president, chief of staff, and general counsel for Alpert and his companies, including a management company known as Danro Corporation.  (Docket Entry No. 110, Second Amended Complaint, at ¶ 5).  Riley acted as the trustee for the DAT, the RAT, and the Children's Trust.  Alpert alleges and provides summary judgment evidence that Riley also worked on aspects of Alpert's finances and business operations, beyond these Trusts. Alpert alleges that Riley hired the Accountant Defendants to act as outside accountants for "all of the Alpert entities," including but not limited to the Trusts.  (*Id*. at ¶ 32).  Alpert alleges that in October 1988, he fired Riley for, among other things, failing to file tax returns for a different trust and for "abusive conduct toward fellow employees."  (*Id*. at ¶ 8).

---

[24]Docket Entry No. 117, Ex. 4.

[25]Docket Entry No. 110, Ex. 4.

The plaintiffs allege that during his employment with Alpert, Riley either negligently or intentionally committed actions that injured Alpert and the DAT, RAT, and Children's Trusts and beneficiaries. The plaintiffs allege that Riley was involved in providing advice in 1994 on securities transactions in which Alpert sold stock and the Trusts then purchased "similar" stock. (Docket Entry No. 110, Second Amended Complaint, at ¶ 21). The plaintiffs allege that Riley "failed to document transactions in the manner required to protect Alpert's participation and to insure that Alpert would be able to recover amounts he had loaned." The plaintiffs also allege that Riley backdated documents without Alpert's knowledge or consent. (*Id*. at ¶ 18). Based on the record, this allegation refers to backdating documents to make it appear as if Riley had been appointed as trustee for the Trusts, which the plaintiffs dispute.

The plaintiffs also allege that Riley "manipulated transactions in order to have Alpert advance funds which Riley then took rather than returning them to Alpert." (Docket Entry No. 110, Second Amended Complaint, at ¶ 17). Based on the record, this allegation refers to Riley's "misdirecting" of tax refund checks for the Trusts, keeping the checks rather than giving them to Alpert.

The plaintiffs allege that shortly before firing Riley, Alpert found a "threatening message" from Riley left on an answering machine, stating that Riley and the Accountant Defendants knew that Alpert had hid income from the IRS. The plaintiffs have submitted a copy of that message. (Docket Entry No. 98, Ex. A, A-1 (CD), A-2 (transcript)). The plaintiffs allege that after Riley was fired, he disclosed information about Alpert's businesses

and finances, including but not limited to the DAT, RAT, and Children's Trusts. The plaintiffs allege that using the Lawyer Defendants Scardino and Courtney as his agents, Riley negotiated an agreement with the IRS to be a paid informant about Alpert's income and finances. (Docket Entry No. 110, Second Amended Complaint, at ¶¶ 25-30). The plaintiffs allege that Riley also contacted other adversaries of Alpert's to encourage or support litigation against him and encouraged other investigations into Alpert's finances and businesses. (*Id.* at ¶¶ 15-16). In his deposition, Alpert described two incidents in which Riley disclosed confidential information about Alpert's finances, besides entering into a confidential informant agreement with the IRS. In the first incident, which took place in March 2000, Riley allegedly provided false information to a prominent New York plaintiff's securities law firm related to a pending lawsuit. (Docket Entry No. 124 at 3). In the second incident, Riley testified unfavorably for Alpert in a suit against Danro and afterward "said 'these problems,' i.e. the Probate litigation, would 'disappear if you pay me $300,000.'" (*Id.*).

As to the Accountant Defendants, the plaintiffs allege that they participated in Riley's interception of a federal tax return refund check for one of the Trusts by "forwarding the tax refund to Riley for execution, even though they had full knowledge that the parties were in litigation and that Dennis Proctor had been appointed trustee." (Docket Entry No. 110, Second Amended Complaint, at ¶¶ 32, 33). The plaintiffs allege that this check should have gone to Alpert as reimbursement for money he had paid to or on behalf of the Trusts. The plaintiffs also allege that the Accountant Defendants were involved in providing confidential documents to the IRS in response to a grand jury subpoena that issued as a result of Riley's

8

agreement with the IRS.  (*Id*. at ¶ 33).

The allegations against Scardino and Courtney, the Lawyer Defendants, are that they acted as agents for Riley in his confidential informant agreement with the IRS and may have stood to benefit financially if Riley successfully performed under that agreement. (Docket Entry No. 110, Second Amended Complaint, at ¶ 26).  The copy of the alleged informant agreement shows spaces for the Lawyer Defendants to sign as Riley's agents.  (Docket Entry No. 110, Ex. 4 at 6).

The causes of action the plaintiffs assert include the following:

- Against Riley alone, conversion. (*Id*. at ¶ 48).

- Against Riley and the Accountant Defendants.

  1. Negligence, gross negligence, and negligent misrepresentation.  (*Id*. at ¶¶ 44– 47).

  2. Breach of fiduciary duty by "taking advantage of confidences reposed" and, as to the Accountant Defendants, in redirecting two tax refund checks for the Children's Trust to Riley.  (*Id*. at ¶ 53).

- Against Riley, Meynier, and the Accountant Defendants, fraud.  (*Id*. at ¶¶ 49, 52).  The only specific fraud  allegation as to Riley is that he advised the plaintiffs on legal and accounting matters "with the intention of then suggesting to the Internal Revenue Service that those actions were wrong, resulting in additional tax burdens and/or penalties from which Defendants intended to profit."  (*Id*. at ¶ 51).  As to the Accountant Defendants, the plaintiffs allege

fraud in the failure to inform them about the tax refund check from the Children's Trust sent to Riley.  As to the Accountant Defendants and Meynier, the plaintiffs allege fraud in the failure to inform them that Riley was improperly disclosing the plaintiffs' financial information.  (*Id*.).

- Against all defendants.

    1.    Violating RICO, 18 U.S.C. § 1962(c).  There is no specific allegation of the alleged underlying fraud.  (*Id*. at ¶¶ 34–43).

    2.    Aiding and abetting a breach of fiduciary duty.  The breaches of fiduciary duty alleged are by Riley and the Accountant Defendants.  The only breaches specifically alleged are disclosing confidences and redirecting two tax refund checks for the 96 Children's Trust to Riley.  (*Id*. at ¶ 53).

    3.    Civil Conspiracy.  (*Id*. at ¶ 57).

    4.    Violating sections 6103 and 7431 of the Internal Revenue Code by disclosing confidential information relating to the plaintiffs through Riley's agreement with the IRS. (*Id.* at ¶ 59).

The defendants move for summary judgment primarily based on the preclusive effect of the probate court proceeding and judgment.  In the state probate court, Riley filed suit on behalf of the DAT, RAT, and the Children's Trusts, contending that Alpert had damaged these Trusts by using them to "improperly evade federal income taxes owed by Alpert."  (Docket Entry No. 93, Probate Suit Third Amended Petition, App. Ex. C).  In the probate court, Riley contended that he was the properly appointed trustee of all three Trusts since 1997 and that

Alpert had damaged the Trusts through improper self-dealing involving stock transactions, trading in the trust accounts on margin, attempting to maintain control of the Trusts, and engaging in improper loans to the Trusts.

In the probate court suit, Alpert and certain business entities that he owned or controlled filed a third-party petition and counterclaim against Riley individually and as trustee, alleging that Alpert had relied on Riley's advice in taking the actions Riley alleged to be improper. Alpert also alleged that Riley had incorrectly treated one of the Trusts as a grantor rather than complex trust for tax purposes, costing Alpert additional taxes, and that Riley removed files relating to the Trusts and other Alpert interests when he was fired. (Docket Entry No. 93, Probate Suit Third-Party Petition, App. Ex. D).

Roman and Daniel Alpert intervened in the state probate court action, suing Riley and the Accountant Defendants and alleging that: Alpert's actions taken with respect to the Trusts resulted from Riley's advice; in 1999, Riley received IRS refund checks for the 1996 Children's Trust that he kept for his own use rather than reimbursing Alpert for loans he had made to the Trusts or for taxes he paid as a result of the incorrect treatment of the Trust as a grantor trust and despite the fact that Riley had been removed as trustee; Riley was not the properly appointed trustee of the Trusts; that Riley backdated documents to make it appear that he was the trustee of the RAT and DAT; Riley improperly turned over to the IRS private confidential information he had obtained regarding the Trusts, in breach of his fiduciary duty to the Trusts and their beneficiaries; and the probate court suit Riley filed and pursued was unauthorized and wasted Trust assets. The beneficiaries asserted causes of action for breach

11

of fiduciary duty, fraud, waste, negligence, conversion, disgorgement, and a constructive trust. (Docket Entry No. 93, Probate Suit Second Amended Petition in Intervention, App. Ex. E).

In the probate court suit, Alpert, Danro, and other Alert interests filed a fifth amended counterclaim and first amended third-party petition, in which they expanded the allegations against Riley to go beyond acts involving the DAT, RAT, and Children's Trust.  With respect to the Trusts, Alpert and the related entities alleged that Riley was not the properly appointed trustee of the Trusts; that Riley was involved in securities transactions transferring stock to the DAT and RAT in 1996 and gave instructions to the brokers, including Smith Barney; that Riley had been responsible for ensuring that the loans from Alpert to the DAT and RAT were properly documented; that Riley incorrectly designated the 1996 Trust as a complex rather than a grantor trust, requiring Alpert to loan the Trust money, which was not repaid because Riley converted tax refund checks that should have gone to Alpert; that when Riley was fired, he wrongfully removed files relating to the DAT, RAT, and the 1996 Trust, ans well as other Alpert interests; that Riley backdated documents to make it appear that he was properly appointed as trustee for these three Trusts; that Riley gave confidential information about Alpert (not limited to the Trusts) to the IRS, violating his attorney-client relationship with Alpert as well as his fiduciary obligations to the Trusts; and that Riley wrongfully intercepted a tax refund for the 1996 Trust.  Alpert claimed a right to indemnity or contribution from Riley.  (Docket Entry No. 93, Probate Court Suit Fifth Amended Counterclaim and First Amended Third Party Petition, App. Ex. F).

A week before the trial in the probate court, Alpert and his related entities filed a

second amended answer and sixth amended counterclaim against Riley, deleting some of the causes of action. In this pleading, Alpert continued to assert that Riley had consented to or approved or initiated the Trust-related actions and transactions that he blamed Alpert for; that Riley's wrongful conduct caused the damages allegedly sustained by the Trusts; and that Alpert was entitled to contribution for those damages. Alpert also sought a declaratory judgment that Riley was not the proper trustee. (Docket Entry No. 93, Probate Suit Second Amended Answer and Sixth Amended Counterclaim Against Mark Riley, Purported Trustee, App. Ex. G). Alpert deleted claims against Riley relating to actions involving aspects of Alpert's businesses and finances other than the three Trusts. (*Id*.). At a pretrial hearing, counsel for Alpert told the probate court judge that this last amended pleading dismissed Alpert's claims against Riley for breaches of their attorney/client relationship and for Riley's malpractice as a lawyer. (Docket Entry No. 98, Ex. B, Transcript from May 16, 2005, p. 9). The beneficiaries' claims against the Accountant Defendants were dismissed before trial. (Docket Entry No. 117 at 5; Ex. 2 at 37).

The parties dispute the scope of the probate court trial. The plaintiffs in this case assert that in the probate court, the judge limited the trial to claims involving Riley's actions in his capacity as a trustee. The plaintiffs assert that they can litigate in this case claims involving Riley's actions in his capacity as a lawyer, even if those actions involve the Trusts. The defendants assert that the probate court proceeding could have included all claims against Riley or his agents and privies, precluding any of the claims asserted in this case.

The probate court judge stated several times before the trial that the probate court was

13

one of limited jurisdiction and that he was not trying malpractice claims arising from "Mr. Riley's conduct as a lawyer," but rather "his role as a trustee." (Docket Entry No. 93, App. Ex. H, Transcript from March 11, 2004, at 14-15; Docket Entry No. 98, Ex. B, Transcript from May 16, 2005, at 7-8). Alpert cites this language and similar statements as evidence that the probate court declined jurisdiction it might have had under Texas law to resolve all claims arising from Riley's conduct as a lawyer, including conduct relating to the Trusts. The defendants respond that the court did not make such a ruling. Instead, before any such ruling, the parties suing Riley in the probate court voluntarily dismissed the claims against him arising from his role as Alpert's lawyer rather than as trustee. The defendants argue that these claims could have been tried in the probate court even if they did not involve the Trusts but other parts of Alpert's finances and business interests.

The record shows that the probate court judge allowed the parties to try the issues relating to how Riley and others working for him handled the Trusts, and that the parties did so. The trial was not limited to Riley's actions in his capacity as trustee. The jury heard extensive evidence and evidence about Riley's work as a lawyer and a CPA in acting as trustee for the Trusts. (*See, e.g.*, Docket Entry No. 93, Ex. I, Transcript of May 25, 2005, at 45, 46, 55). The jury heard extensive evidence and argument about whether Riley was properly appointed as the trustee, his actions in retaining Trust tax refund checks, and his disclosure of information to the IRS. (*See, e.g.*, Docket Entry No. 93, Ex. M, Transcript of June 6, 2005).

In the jury charge, the court submitted issues asking whether Alpert had violated duties

14

owing to the Trusts.  The jury found that Alpert had violated duties to the Trusts and owed damages as a result.  The court submitted an issue asking whether Riley breached his fiduciary duty to the Trusts or beneficiaries.  The jury answered "Yes" to this question for each of the three Trusts, but found that no damages had resulted from the breach.  (Docket Entry No. 93, Ex. B at 19–20).  The probate court had previously entered summary judgment finding that certain securities sales and related transactions between Alpert and the Trusts breached Alpert's fiduciary duties to the Trusts.  The probate court entered final judgment on these rulings and the jury's findings that Alpert had breached duties to the Trusts and caused damages.  The probate court set aside the jury's finding that Riley had breached fiduciary duties to the Trusts (while finding no damages).  The probate court entered a take-nothing judgment as to Alpert's counterclaims against Riley, "individually and as Trustee."  The probate court entered judgment that Riley was properly appointed as Trustee of the three Trusts; approving the accountings filed by Riley and approving the distributions, fees, costs, and expenses by Riley as trustee of the three Trusts; and reappointing him as trustee.  (Docket Entry No. 93, Ex. A).

As noted, the parties dispute whether the probate court tried all the issues relating to Riley's actions and omissions to the three Trusts.  The plaintiffs assert that the probate court only exercised jurisdiction over Riley's conduct as a trustee, not as a lawyer, allowing them to retry the same conduct in this case to determine whether it violated duties other than the fiduciary duty he owed as a trustee.  Riley, the Accountant Defendants, and the Lawyer Defendants assert that the probate court case is preclusive of all the claims that are asserted

against them in this federal case.  This court finds that the record and applicable law do not

fully support either position.  Instead, as explained below, the probate court proceedings and

judgment preclude this court from relitigating issues relating to the three Trusts, but permit

the plaintiffs to proceed on claims relating to the handling of other aspects of Alpert's

financial and business affairs.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The

movant bears the burden of identifying those portions of the record it believes demonstrate

the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d

(5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the burden of

proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary

documents that negate the existence of some material element of the opponent's claim or

defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden

of proof at trial, demonstrate that the evidence in the record insufficiently supports an

essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary

judgment must demonstrate the absence of a genuine issue of material fact, but need not

negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d

536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of

the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson

v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)).  If the moving party fails to meet its

initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. Exxonmobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

## III.    Claim and Issue Preclusion

Res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v.*

17

*Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1662 (2006), *citing Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004). The test for res judicata has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.; see also Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. *Test Masters*, 428 F.3d at 571 (internal citations omitted). When all four elements are present, claim preclusion prohibits a litigant from asserting "any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action." *Shanbaum*, 10 F.3d at 310.

When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates. *Production Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996); *Hogue v. Royse City*, 939 F.2d 1249, 1252 (5th Cir. 1991). Because the defendants interpose the judgment of a Texas court as bars to the plaintiffs' current suit, Texas res judicata law applies. The elements are the same as under federal law. In Texas, "[r]es judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*,

837 S.W.2d 627, 628 (Tex. 1992).  To invoke the doctrine, the proponent must prove: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them, and (3) a second action based on the same claims as were raised or should have been raised in the first action.  *See Tex. Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979).

The parties dispute whether in this second action, they are seeking to adjudicate claims that could have been litigated in the state court probate action.  The plaintiffs assert that in the probate court suit, they could not litigate issues relating to whether Riley breached duties he owed to Alpert as his lawyer, in addition to duties he owed the Trusts as trustee.  The defendants respond that Alpert and the beneficiaries could have raised these issues in the probate court, but chose not to do so.  This court finds that the probate court had and exercised jurisdiction over all the claims relating to the Trusts, including claims involving Riley's actions as a lawyer as well as a trustee.  The probate court, however, declined to exercise jurisdiction over claims relating to Riley's involvement as Alpert's lawyer with other aspects of Alpert's finances and business operations, unrelated to the Trusts, even if those claims might have been brought in the probate court.

If the first court either lacks or declines jurisdiction, claim preclusion does not apply.  *See generally* 18A Charles A. Wright, Arthur Miller, & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D § 4436 (2002).  In this case, it is clear that the probate court had jurisdiction over all matters and issues relating to the handling of the three Trusts.  Under Texas Trust Code, the probate court had jurisdiction to:

(1) construe a trust instrument;
(2) determine the law applicable to a trust instrument;
(3) appoint or remove a trustee;
(4) determine the powers, responsibilities, duties, and liability of a trustee;
(5) ascertain beneficiaries;
(6) make determinations of fact affecting the administration, distribution, or duration of a trust;
(7) determine a question arising in the administration or distribution of a trust;
(8) relieve a trustee from any or all of the duties, limitations, and restrictions otherwise existing under the terms of the trust instrument or of this subtitle;
(9) require an accounting by a trustee, review trustee fees, and settle interim or final accounts; and
(10) surcharge a trustee.

Tex. Prop. Code Ann. § 115.001(a).

The parties dispute whether the probate court judge made a definitive ruling that he lacked ancillary jurisdiction over claims arising from the attorney/client relationship between Alpert and Riley, or whether Alpert and the Trust beneficiaries first voluntarily dismissed claims against Riley arising from that relationship. The judge stated on May 16, 2005, "I thought I had made a ruling, although not in writing, but I had said from the bench several times that I don't think this case is about Mr. Riley's conduct as a lawyer, it's about his role as a trustee. Also, I think the lawsuit involving his professional services is in Federal Court. I certainly wouldn't want to interfere with a judgment or jurisdiction of a Federal Court." (Docket Entry No. 98, Ex. B at 7–8). The defendants argue that the probate court judge had jurisdiction not only over issues relating to the Trusts, but also ancillary jurisdiction over other claims against Alpert and the Attorney Defendants and the Accounting Defendants. The

defendants assert that this jurisdiction extended to the claims Alpert and related parties asserted against Riley but dismissed voluntarily shortly before trial, and to the claims asserted against the Accounting Defendants that were dismissed voluntarily before trial.

Even if, as the defendants argue, the probate court judge could have exercised jurisdiction over such claims, he made it clear that he did not intend to do so. The parties, consistent with the probate court judge's statements from the bench, agreed to limit the claims presented and litigated to those involving and affecting the Trusts. Contrary to the plaintiffs' arguments, however, these claims were not limited to claims against Riley in his capacity as Trustee, excluding those against Riley in his capacity as a lawyer. Rather, the probate court judge recognized that he had jurisdiction over all the claims relating to the Trusts, regardless of whether the claims were against or by Riley as a lawyer, CPA, trustee, or individual. The probate judge recognized that the parties could not separate Riley's actions as a trustee from the fact that he was a lawyer. "Mr. Riley is an attorney, so everything he did was during the time he was licensed to practice law. You can't really parcel it that way either." (*Id*. at 10). The probate court judge declined to exercise jurisdiction only over claims against Riley that had no relationship to the Trusts.

The probate court judge allowed the parties to litigate who was the trustee of the Trusts and all issues relating to whether the Trusts were properly handled and administered. The court made it clear that it would not try Alpert's claims relating to how Riley conducted himself in handling other aspects of Alpert's finances and business operations, which Riley was responsible for because he was Alpert's lawyer, not because he was the trustee for the

21

Trusts.  Alpert had pleaded such claims but, after the probate court judge's statements as to the limits of the jurisdiction he would exercise, voluntarily dismissed them before trial. Counsel for Alpert and related entities told the probate court judge that the amended counterclaim and third-party petition filed just before trial had deleted Alpert's claims against Riley "for malpractice or breaches of fiduciary duty arising from his attorney/client relationship with Robert Alpert."  (Docket Entry No. 98, Transcript from May 16, 2005, at 11).  These claims could not have been litigated in the probate court because they were unrelated to the Trusts and the probate court judge made it clear he would not try claims that arose from Riley's and Alpert's lawyer/client relationship and had no relationship to the Trusts. But all the claims relating to the Trusts could have been, and were, raised in the probate court.  The probate court allowed the parties to litigate, and entered judgment on, all the claims against Riley relating to his handling of the Trusts.

In the present suit, the plaintiffs do not limit themselves to the claims that were asserted and tried in the probate court suit.  The plaintiffs have pleaded that Riley violated duties owing to Alpert as lawyer for Alpert's finances and business operations unrelated to the Trusts or occurring after June 8, 2005, the date of the jury verdict.  Those claims could not have been litigated in the probate court.  The nucleus of facts relating to those claims in the current action is based on events unrelated to the Trusts or that did not occur at the time of the previous claim.  The doctrine of claim preclusion does not apply; however, collateral estoppel or issue preclusion does.

Issue preclusion, or collateral estoppel, precludes a party from litigating an issue raised

22

in an earlier action between the same parties if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *Test Masters*, 428 F.3d at 572; *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232 n. 5, (1998); *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir.1999) ("[R]elitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings."). Under Texas law, "collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 at n.16 (5th Cir. 2006).

The state court record the parties have submitted makes it clear that the issues in the present case relating to Riley's handling of the Trusts were actually and necessarily litigated in the state court probate action. Alpert's last pleading in the state court broadly alleged improprieties in Riley's handling of the Trusts. (Docket Entry No. 93, Ex. G). Roman and Daniel Alpert, interveners in the probate court, more specifically alleged that Riley improperly cashed IRS refund checks, backdated documents to make it appear that he was the trustee, stole Trust documents, and provided confidential financial information about the Trusts to the IRS. (Docket Entry No. 98, Ex. E at 6–7). Before trial, the parties had litigated, and the court had ruled, that Riley had not committed any improprieties with respect to the securities transactions involving Alpert and the Trusts. At trial, the parties litigated whether

Riley was properly appointed as trustee, whether he had improperly handled tax refund checks issued to the Trusts, whether he had improperly disclosed information relating to the Trusts to the IRS, whether he had backdated documents to make himself appear as trustee, whether he had converted funds belonging to the Trusts, and whether he had properly handled the Trusts. In the final judgment, the state court found that Alpert had violated duties owing to the Trusts and awarded damages; found that Riley was properly appointed as trustee; found that Riley had not breached duties owing to the Trusts; and approved "all the accountings filed by Riley as trustee." (Docket Entry No. 98, Order XI). The final judgment dismissed all Alpert's claims against Riley, both "individually and as trustee." (*Id.*, Orders VIII, IX).

The plaintiffs argue that issue preclusion does not apply to prevent them from relitigating issues relating to the Trusts insofar as they are based on Riley's conduct as a lawyer rather than as a trustee. The plaintiffs argue that the probate court did not "attempt to exercise jurisdiction over issues involving claims of these Plaintiffs against Riley in any capacity other than his alleged trustee capacity." (Docket Entry No. 98 at 16). The record does not support this argument. The record shows that the probate court limited the case to the Trusts as opposed to other aspects of Alpert's finances and business operations, but did not require the parties to distinguish between whether Riley's advice and conduct involving or affecting the Trusts was given as a lawyer, a CPA, or "only" a trustee. To the contrary, the judge recognized that such fine distinctions could not be made. The lawyers and litigants also did not make any such distinction. Alpert's counsel repeatedly referred to Riley's role as accountant and lawyer at trial and in court filings: "He was the person in Mr. Alpert's office

who was, as a lawyer and a CPA, supposed to be advising on matters that you'll be hearing." (Docket Entry No. 98, Ex. I at 45). "He was serving in a treasury function. He was serving in a legal function – he was making decisions." (*Id*. at 46). "He's a lawyer. He's a CPA, and he had access to this information." (*Id*. at 55). "Riley was all of these Defendants' legal counsel; tax advisor; 'treasurer'; administrator; office supervisor; and 'in-house' C.P.A." (Docket Entry No. 98, Ex. J at 4). "He wears a lot of hats. . . compliance officer, . . . legal counsel to the trustees for the RAT and the DAT and the 1996 Trust. . . ." (Docket Entry No. 98, Ex. M at 320).

The issues relating to Riley's handling of the Trusts and the effect of his actions on the Trusts were litigated in probate court and were necessary to the judgment in that action. The plaintiffs cannot relitigate in this case whether Riley was the properly appointed trustee of the Trusts; whether Riley committed improprieties in the securities transactions involving Alpert and the Trusts; whether Riley committed improprieties in handling the Trusts or the Trusts accountings, including disclosing confidential tax information relating to the Trusts. (Docket Entry No. 110, Second Amended Complaint, at ¶ 14). The plaintiffs cannot relitigate whether Riley failed to document Alpert's transactions relating to the Trusts or whether Riley "manipulated" transactions to prevent Alpert from recovering money he had advanced to the Trusts, (*id*. at ¶ 17); whether Riley backdated documents relating to the Trusts, (*id*. at ¶ 18); whether Riley gave improper advice in 1994 about the securities transactions that Alpert conducted that also involved the Trusts, (*id*. at ¶ 21); whether Riley improperly handled the treasury function of the Trusts, (*id*. at ¶ 24); whether Riley improperly provided information

to the IRS about the Trusts, (*id.* at ¶¶ 20, 25, 26, 28, 29, 30); whether Riley improperly filed the lawsuit against Alpert in the probate court alleging self-dealing with the Trusts, (*id.* at ¶ 25); whether Riley improperly removed documents about the Trusts from Alpert's offices, (*id.* at ¶ 27); and whether Riley improperly handled the tax refund checks for the Children's Trust, (*id.* at ¶ 31).  Because the only claims against Meynier are as Riley's agent, they are precluded.  The issue preclusion bar extends to the date of the jury verdict in the state court.

The record shows that the Accountant Defendants were named as defendants in the probate court but voluntarily dismissed.  (Docket Entry No. 117 at 5; Ex. 2 at 37).  Because the probate court has found that Riley did not breach any duties to the Trusts and approved of all the accountings made for the Trusts, the claims against the Accountant Defendants relating to Riley's accounting treatment of the Trusts and the handling of the tax refund checks for the Trusts are barred by issue preclusion.  The claims that the Accountant Defendants violated RICO, were negligent, committed fraud, breached fiduciary duties or aided in the breach of fiduciary by others, or engaged in a civil conspiracy are precluded insofar as those claims are based on Riley's accountings for the Trusts and the handling of the Trusts' tax refund checks. (Docket Entry No. 110, Second Amended Complaint, at ¶¶ 31, 32).

Although the second amended complaint states that the Accountant Defendants provided outside accounting work for Alpert unrelated to the Trusts for part of the time Riley was in-house counsel and financial advisor to Alpert, there is no specific allegation that the Accountant Defendants were negligent or breached any duties relating to this work.  The second amended complaint states that the Accountant Defendants conspired with Riley to

obtain funds from Alpert.  (*Id*. at ¶ 32).  The only allegation and summary judgment evidence is that the Accountant Defendants participated in having Riley rather than Alpert receive the tax refund checks relating to the Children's Trust.  (*Id*. at ¶ 33).  That allegation cannot be litigated in this case because Riley's right to receive the refund checks was litigated in the prior probate court suit.  The second amended complaint generally states that the Accountant Defendants assisted Riley in obtaining confidential information to use against Alpert.  (*Id*. at ¶ 32).  The only allegation and summary judgment evidence as to this statement is that the Accountant Defendants responded to grand jury subpoenas requiring production of financial information about Alpert.  (*Id*. at ¶ 33).  For the reasons stated below, compliance with a grand jury subpoena cannot be the basis for a damages claim; this allegation cannot proceed in this suit.

The Lawyer Defendants were not parties in the probate court suit.  The only basis of the claims against the Lawyer Defendants is that they allegedly helped negotiate the IRS confidential informant agreement.  (Docket Entry No. 110 at 10).  In the probate court case, the parties necessarily litigated whether Riley breached his duties to the Trusts in disclosing information to the IRS.  That claim cannot be relitigated in this case.  The only claim that can proceed against the Lawyer Defendants arises from their role in negotiating the agreement insofar as that agreement involves disclosing information about aspects of Alpert's finances and taxes unrelated to the Trusts.

There are no claims alleged in this case by the Trusts beneficiaries Daniel and Roman Alpert that were not litigated in the probate court, other than those arising after June 2005.

27

The beneficiaries' claims against Riley, Meynier, and the Lawyer Defendants involving the Trusts are barred except for those claims arising after the jury verdict.

The claims that may proceed are those asserted by Alpert against Riley, Meynier, and the Lawyer Defendants arising from Riley's involvement in and actions affecting aspects of Alpert's finances and business operations unrelated to the Trusts, and the beneficiaries' claims against Riley and Meynier arising after the date of the state court jury verdict.[26]

## IV.    The Claim Against the Accountant Defendants for their Response to Subpoena

The plaintiffs allege that the Accountant Defendants produced "boxes of financial documents" in response to a grand jury subpoena. (Docket Entry No. 110, Second Amended Complaint, at ¶ 33). The plaintiffs allege that the Accountant Defendants are liable to pay damages for producing the documents called for in the subpoena.

The Accountant Defendants were subpoenaed as third-party witnesses to produce the documents. Witnesses (who are not targets of the grand jury) are not entitled to test the limits of the grand jury's authority. *United States v. Calandra*, 414 U.S. 338, 346 (1974). Alpert does not allege or identify summary judgment evidence that the Accountant Defendants had a basis to refuse to comply with the grand jury subpoena. An accountant's production of tax and financial records under a grand jury subpoena is not privileged under the Fifth Amendment. *Couch v. United States*, 409 U.S. 322 (1973). "[The accountant], not the

---

[26] The Lawyer Defendants argue that because Riley, not Alpert, was their client, they owed no duty to Alpert that could be breached. (Docket Entry No. 95 at 8–10). The plaintiffs do not respond to this argument. (Docket Entry Nos. 98, 125). However, in the second amended complaint, the plaintiffs removed the claims that the Lawyer Defendants owed and breached a professional duty to the plaintiffs. (Docket Entry No. 110). The causes of action asserted against the Lawyer Defendants are aiding and abetting a breach of fiduciary duty, civil conspiracy, and RICO.

taxpayer, is the only one compelled to do anything. And the accountant makes no claim that he may tend to be incriminated by the production. . . . [S]uch divulgence, where it does not result from coercion of the suspect herself, is a necessary part of the process of law enforcement and tax investigation." *Id.* at 329; *see also U.S. v. Jones*, 630 F.2d 1073, 1076–77 (5th Cir. 1980) ("Fifth Amendment privilege against self-incrimination was not available to prevent enforcement of an IRS summons where the taxpayer had effectively surrendered possession of the records sought to be inspected to her accountant.").

Texas cases also make it clear that producing confidential documents in response to a subpoena cannot provide the basis of a damages claim for breaching confidentiality. In *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 470–71 (Tex. App.—Amarillo, 2001) (petition for review abated, appeal reinstated, review denied April 3, 2003), the defendants produced documents in response to a subpoena. The documents contained trade secrets. *Id.* at 473. The court found that the production of the information responsive to the subpoena was privileged, recognizing that Texas law provides a civil remedy for wrongfully disclosing trade secrets. "[C]ommunications in connection with judicial proceedings [cannot] be the basis for any other tort action based upon disclosure of the contents of the communications, even if the legislature has statutorily provided that the contents are privileged and that civil damages are recoverable in the event of unauthorized disclosure of the contents." *Id.* at 470–71.

The record shows that the Accountant Defendants acted in response to a subpoena; that activity cannot form the basis of a damages claim. The claim against the Accountant Defendants for complying with the subpoena is dismissed.

## V.     The Claims Based on Sections 6103 and 7431 of the Internal Revenue Code

The plaintiffs allege that all the defendants violated sections 6103 and 7431 of the Internal Revenue Code in providing information to the IRS about the plaintiffs' finances and tax returns. (Docket Entry No. 110 at 20–21). The Accountant Defendants argue that there is no cause of action under these statutory sections. (Docket Entry No. 117 at 2–4; Docket Entry No. 29; Docket Entry No. 63). The plaintiffs do not respond to this argument in recent filings. (Docket Entry Nos. 98, 125). The plaintiffs stated in a footnote in an earlier filing that the "Accountant Defendants assert in passing that IRC §6103 and §7431 do not apply to tax preparers, but they provide no authority for that position." (Docket Entry No. 71 at 3, n.2).

Section 7431 provides a taxpayer a private cause of action against a person who is not an officer or employee of the federal government who has violated section 6103. Section 7431 states: "If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States." 28 U.S.C. § 7431(a)(2) (2006).

Section 6103 provides:

> (a) General rule.—Returns and return information shall be confidential, and except as authorized by this title—
> (1) no officer or employee of the United States,
> (2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information

30

> under this section or section 6104(c), and
>
> (3) no other person (or officer or employee thereof) who has or
> had access to returns or return information under subsection
> (e)(1)(D)(iii), paragraph (6), (12), (16), (19), or (20) of
> subsection (l), paragraph (2) or (4)(B) of subsection (m), or
> subsection (n),
>
> shall disclose any return or return information obtained by him
> in any manner in connection with his service as such an officer
> or an employee or otherwise or under the provisions of this
> section.

26 U.S.C. § 6103(a) (2006).  None of the defendants are employees or officers of the federal

or state government.  Section 6103 can only apply if the defendants are "other persons" who

have access to tax records in the specific ways defined in section 6103(a)(3).

The "other person" defined in subsection (e)(1)(D)(iii) is "any bona fide shareholder

of record owning 1 percent or more of the outstanding stock of such corporation."  26 U.S.C.

§ 6103(e)(1)(D).  "Other persons" in paragraph (6), (12), (16), (19), or (20) of subsection (l)

have access to the records from "[d]isclosure of return information to Federal, State, and local

child support enforcement agencies," "[d]isclosure of certain taxpayer identity information

for verification of employment status of medicare beneficiary and spouse of medicare

beneficiary," "[d]isclosure of return information for purposes of administering the District of

Columbia Retirement Protection Act of 1997," "[d]isclosure of return information for

purposes of providing transitional assistance under medicare discount card program," and

"[d]isclosure of return information to carry out medicare part B premium subsidy adjustment."

*Id.* at § 6103(l)(6), (12), (19), (20).  "Other persons" in paragraph (2) or (4)(B) of

subsection (m) refers to the "[s]pecial rule for consumer reporting agency" and "[d]isclosure

to educational institutions."  *Id.* at § 6103(m).  The "other person" in subsection (n) is defined

31

as follows:  "[p]ursuant to regulations prescribed by the Secretary, returns and return information may be disclosed to any person, including any person described in section 7513(a), to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration."  *Id.* at § 6103(n).

The plaintiffs have neither alleged nor identified evidence in the record showing that the defendants acted in any capacity described above, receiving confidential information from a government agency or official for the described reasons.  "[S]ection 6103 is a regulation of the conduct of those who in the course of their duties as government employees or contractors glean information from tax returns.  The regulation is prophylactic, proscribing disclosure by such an individual of any such information so obtained by him." *Johnson v. Sawyer*, 120 F.3d 1307, 1322 (5th Cir. 1997) (citing *Johnson v. Sawyer*, 47 F.3d 716, 735 (5th Cir. 1995) (en banc)) (emphasis omitted).  There is no evidence that any of the defendants acted as government contractors, receiving tax information from the government in the ways specified in section 6103.

Summary judgment is granted as to the claims based on 26 U.S.C. §§ 6103 and 7431.

## VI.   The RICO and the Fraud Claims:  Pleading Deficiencies

The plaintiffs allege that the defendants violated 18 U.S.C. § 1962(c) (RICO).  The plaintiffs do not, however, identify with specificity the underlying predicate acts.  A claim under 18 U.S.C. § 1962 entails "(1) a person who engages in (2) a pattern of racketeering

activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In re MasterCard Intern. Inc.*, 313 F.3d 257, 260 (5th Cir. 2002).  "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.  The predicate acts can be either state or federal crimes." *In re MasterCard*, 313 F.3d at 261–62. The plaintiffs allege that the predicate offenses for their RICO claims are mail fraud and wire fraud, 18 U.S.C. §§ 1341, 1343.  (Docket Entry No. 110 at 15).  The plaintiffs allege that fraud was "electronic banking transactions and interstate telephone calls to the Plaintiffs to and from Texas, Arizona, Colorado, and Florida."  (*Id.*).  However, the plaintiffs do not identify or provide evidence of any such transactions or communications.

RICO creates a cause of action for a person "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c); *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 439 (5th Cir. 2000). "The 'by reason of' language of RICO has been interpreted by the Supreme Court, *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), and by [the Fifth Circuit], *Summit*, 214 F.3d at 558, to require a showing that the fraud was the 'but for' cause and 'proximate' cause of the injury." *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003).  The Fifth Circuit interpreted *Holmes* to "require[] a causal connection between the predicate mail or wire fraud and a plaintiff's injury that includes 'but for' and 'proximate' causation." *Id.*  The plaintiffs allege that the injury was the defendants' plan to "a. exercise control over funds belonging to Plaintiffs; b. extort funds from Plaintiffs; profit inappropriately from their own

33

misconduct, including their conspiracy to defraud Plaintiffs and through their use of confidential and otherwise protected information which they received through the conspiracy; and d. to receive and utilize funds to which they were not entitled." (Docket Entry No. 110 at 14).

Under issue preclusion, as noted, the plaintiffs cannot assert as predicate acts allegations of conduct that were actually and necessarily litigated in the state court proceeding. To the extent the RICO allegations are based on conduct involving and affecting the Trusts, such as Riley's retention of the tax refund checks or his disclosure to the IRS of confidential information about the Trusts, those allegations cannot be relitigated here under the RICO label.

The RICO claim is pleaded broadly and generally. Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims resting on fraud allegations. *See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) also applies to state law allegations of intentional fraud. *Id.* Pleading the elements of fraud with particularity requires a plaintiff to specify "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Id.* Moreover, under RICO, when civil RICO damages are sought for injuries resulting from fraud, the plaintiff must show reliance on the fraud. *See Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003) ("RICO fraud cases "require a showing of detrimental reliance *by the plaintiff*, which is consistent with *Holmes*' admonition that federal courts employ traditional notions of proximate cause when assessing

34

the nexus between a plaintiff's injuries and the underlying RICO violation.") (emphasis in original); *Summit Properties Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 559 (5th Cir. 2000) (stating that in a criminal RICO case "the government can punish unsuccessful schemes to defraud because the underlying mail fraud violation does not require reliance, but a civil plaintiff 'faces an additional hurdle' and must show an injury caused 'by reason of' the violation.").

In the amended complaint, the plaintiffs allege that the wire and mail fraud included "electronic banking transactions and interstate telephone calls to the Plaintiffs to and from Texas, Arizona, Colorado, and Florida."  (Docket Entry No. 110 at 15).  However, the plaintiffs do not plead that they relied on particular communications, causing injury.  Rather, they allege that many of the acts they challenge and the injuries they allege occurred after Riley was no longer working for Alpert.  (Docket Entry No. 124 at 3).

The defendants have moved for summary judgment as to the RICO claim on the basis of the statute of limitations as well as preclusion.  (Docket Entry Nos. 117, 118).  The RICO claim is subject to a four-year statute of limitations.  *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 772 (5th Cir. 2000); *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).  A RICO claim accrues when the plaintiff discovers the injury.  *Rotella v. Wood*, 147 F.3d 438, 439–40 (5th Cir. 1998).  "[T]he injury discovery rule calculates accrual from the discovery of that injury, accrual of a civil RICO claim is delayed until the plaintiff is aware, or should have been aware, of the injury." *Love*, 230 F.3d at 777.  The plaintiffs respond that they have not been given an opportunity to conduct discovery relevant to limitations and other

35

issues.  (Docket Entry No. 125 at 15).  Even before such discovery, however, the RICO pleading and the fraud pleading must be amended to comply with Rule 9(b) requirements.

No later than April 20, 2007, the plaintiffs must amend to identify for each defendant the specific factual basis of liability and the injury to each plaintiff; for the fraud alleged, to state with particularity the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby; to state whether and how any of the predicate acts have been the basis of a judgment in civil litigation; and to describe how the predicate acts form a pattern of racketeering activity and relate to each other as part of a common plan.  The amendment must also state with particularity the injury alleged and the causal relationship between the injury and the violations alleged, including each plaintiff's reliance.

## VIII.  Conclusion

This court grants summary judgment as to the claims based on 26 U.S.C. §§ 6103 and 7431.  This court also grants summary judgment as to the claims asserted by the plaintiffs against Lolley & Fontenot, P.C., R. Lance Lolley and Bobby L. Fontenot.  This court grants summary judgment as to the claims asserted against Mark R. Riley, Dixie G. Meynier, Robert Scardino, and Scot Courtney, which are based on or arise from their actions involving or affecting the DAT, RAT, and 1996 Children's Trust, other than claims based on conduct after June 8, 2005, the date of the jury verdict in the state court suit.  As to the claims based on or arising from the defendants' actions involving Alpert's finances and business operations unrelated to the Trusts, the plaintiffs are ordered to amend the allegations of RICO violations

and fraud no later than **April 20, 2007**, to meet the requirements of Rule 9(b) of the Federal

Rules of Civil Procedure.

SIGNED on March 29, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge