# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ALPERT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-CV-3774 |
| | § | |
| MARK R. RILEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This memorandum and opinion addresses the following issues and motions:

1.      Issues relating to this court's jurisdiction to decide the claims arising from the post-June 8, 2005 handling and administration of the trusts established for Robert Alpert's sons.  (Docket Entry Nos. 148, 154, 164).

2.      The motion for final judgment under Rule 54(b) of the Federal Rules of Civil Procedure filed by Lolley & Fontenot, P.C., and its principals, R. Lance Lolley and Bobby L. Fontenot (the "Accountant Defendants"). (Docket Entry Nos. 144, 153, 155).

3.      The motion to dismiss filed by Robert Scardino and Scot Courtney (the "Lawyer Defendants").  (Docket Entries No. 151, 152, 158, 159, 166, 167, 168).

Based on the pleadings, the motions, responses and replies, the parties' arguments, the materials submitted, and the applicable law, this court concludes that it has jurisdiction over trust-related claims in this case and need not abstain; denies the motion to enter final

judgment as to the Accountant Defendants; and grants the motion to dismiss as to the Lawyer Defendants.  The reasons for these rulings are explained in detail below.

## I.    Background

The plaintiffs, Robert Alpert and his sons, Roman Alpert and Daniel Alpert (appearing through Daniel Alpert's mother, Renee Picazo, his next friend and guardian), sued three sets of defendants in this case.  The first set is Mark R. Riley and his former legal assistant, Dixie G. Meynier.  Riley is a lawyer and an accountant who worked for Alpert and entities that he owned or controlled from June 1994 to October 1998.  The second set of defendants, the "Accountant Defendants," consists of Lolley & Fontenot, P.C. and its principals, R. Lance Lolley and Bobby L. Fontenot.  Riley hired the Accountant Defendants to provide outside accounting services, including for three trusts that Alpert established for Roman and Daniel Alpert in 1990 and 1996.  The third set of defendants, the "Lawyer Defendants," consists of two lawyers retained by Riley, Robert Scardino and Scot Courtney.  The Lawyer Defendants represented Riley in 1999 in connection with an agreement with the IRS to provide information about Alpert and his finances, including the three trusts Alpert established for his sons.

In the original complaint the plaintiffs filed on September 28, 2004 and in the amended complaint filed on February 4, 2005, the primary focus was on Riley's actions with respect to three trusts that Alpert had established:  the 1990 Roman Alpert Trust (RAT) and Daniel Alpert Trust (DAT), and the Robert Alpert 1996 Children's Trust (the "Children's Trust") (together, the "three Trusts").  On September 9, 2005, this court stayed this federal

lawsuit because Riley and Alpert were litigating many of the same issues in a Texas probate court case styled *In re: The Roman Merker and Daniel James Alpert Trust (Mark Riley v. Robert Alpert)*, consolidated with *In re: The Robert Alpert 1996 Children's Trust (Dennis Proctor v. Mark Riley and Lolley & Fontenot P.C.)*.[1]

In the probate court case, the judge resolved a number of claims on summary judgment, held a jury trial on the remaining claims in 2005, and entered final judgment in Riley's favor on March 28, 2006. The final judgment established that Alpert had breached his duty to the three Trusts and beneficiaries of those Trusts by engaging in certain stock transactions between December 1993 and September 1996 that constituted improper self-dealing. The final judgment also established that Riley was the properly appointed trustee of the three Trusts and had not breached any fiduciary duty he owed to those trusts. The final judgment expressly approved the accountings that Riley had filed for the three Trusts from their inception to June 8, 2005, the date of the jury verdict. The final judgment also dismissed the counterclaims Alpert had asserted against "Mark Riley, individually and as Trustee."

After the judgment in the state court case was entered, the stay in this federal case was lifted and the three sets of defendants filed motions for summary judgment. Acknowledging that some of the issues raised in this case were precluded by the state court suit, the plaintiffs filed a second amended complaint on September 28, 2006. (Docket Entry No. 110). This

---

[1] Cause No. 305,232-401 consolidated with Cause No. 323,013.

court granted the Accountant Defendants' motion for summary judgment and granted in part and denied in part the remaining motions for summary judgment.  This court dismissed the causes of action asserted in the plaintiffs' second amended complaint  insofar as they were based on the handling of the three Trusts that were the subject of the probate court litigation and June 8, 2005 verdict.  The remaining causes of action were those based on the defendants' actions relating to Alpert's finances and businesses other than the three Trusts and those based on actions relating to the three Trusts occurring after June 8, 2005.  This court also dismissed the cause of action arising under the Internal Revenue Code, 26 U.S.C. §§ 6103 and 7431, as to all defendants.  Finally, with respect to the RICO and fraud claims, this court ordered the plaintiffs to amend to comply with the applicable pleading requirements.

The plaintiffs filed a third amended complaint.  (Docket Entry No. 132).  In that complaint, the plaintiffs added claims relating to a fourth trust, the Alpert Family Charitable Remainder Unitrust (the "CRUT"), which Alpert formed in 1997, with Riley as trustee, as a "sophisticated tax planning tool."  (Id. at 7-8).  The plaintiffs alleged that Riley was terminated as trustee in 1999.  The CRUT was not at issue in the state probate court litigation.

In the third amended complaint, the plaintiffs alleged, at length, details of their involvement with the three sets of defendants.  Some of those details pertained to the three Trusts that had been litigated in the state probate court, such as the handling of IRS tax refund checks.  Other allegations dealt with the CRUT.  Yet other allegations dealt with

4

Riley's activities involving parts of Alpert's businesses unrelated to the CRUT or the three Trusts and Riley's efforts to become an "informant" against Alpert with the IRS and the involvement of the Lawyer Defendants in that effort.  Based on these allegations, the plaintiffs alleged violations of the federal civil RICO statute, 18 U.S.C. § 1962(c) against all defendants.  The plaintiffs alleged state-law claims for negligence and gross negligence, negligent misrepresentation, and breach of fiduciary duty as to Riley and the Accountant Defendants; conversion as to Riley; fraud as to Riley, Meynier, and the Accountant Defendants; and aiding and abetting a breach of fiduciary duty, civil conspiracy, and violations of § § 6103 and 7431 of the Internal Revenue Code (and a declaratory judgment that these sections were violated) as to all defendants.  The plaintiffs also sought a declaratory judgment that Riley was prohibited from being appointed as trustee to the CRUT. The plaintiffs sought punitive damages, attorneys' fees and prejudgment interest; disgorgement or forfeiture of fees paid to Riley; and, to the extent that the defendants used or received properties, funds, or assets belonging to the plaintiffs or the trusts, the imposition of a constructive trust with respect to those items.

Meanwhile, the state-court proceedings continued after the jury verdict of June 8, 2005 resulted in the final judgment entered on March 28, 2006.  (Docket Entry No. 153, Ex. A at 18-23).  The plaintiffs appealed the  probate court judgment.  On July 3, 2006 the Texas court of appeals issued a stay against the enforcement and execution of the judgment. (Docket Entry No. 153, Ex. A at 16).  The plaintiffs filed an emergency motion to enforce the stay and sought sanctions against Riley for violating the stay.  (Docket Entry No. 153,

Ex. A at 1–13).  On June 29, 2007, the appellate court abated the appeal and remanded the case to the probate court to hold a hearing to determine whether Riley had violated the stay by serving as trustee, attempting to enforce the probate court's judgment, and withdrawing trust assets.  The appeals court also asked the probate court to determine who served as trustee before the probate court's judgment and under what authority.  The appeals court stated that the appeal would be reinstated upon motion of either party or upon the court's own motion after the probate court had issued its findings.  (Docket Entry No. 148, Ex. A).

The probate court held a hearing on July 23, 2007.  On August 3, 2007, the probate court issued findings and conclusions, stating that Riley did not violate the stay, that Riley had served as trustee before the probate court's judgment, and that "[t]he core purpose of the case below was for Mr. Riley to withdraw as trustee and with approval of his final accounting, be released as trustee."  (Docket Entry No. 154, Ex. A).

On May 30, 2007, the plaintiffs filed a motion for injunctive relief in this court, seeking to require Riley to provide information regarding transactions in the three Trusts from June 8, 2005 forward; distribute assets from one of the three Trusts, the RAT; deliver assets from the Trusts to the registry of this court; and cease making further disbursements from the three Trusts other than the requested disbursement from the RAT.  (Docket Entry No. 133).  On June 18, 2007, Riley filed in the probate court a request for approval of an accounting that he had submitted to that court.  In the federal case, the plaintiffs asserted that Riley was seeking to avoid this court's review of the trust-related issues by inviting the state court to exercise ongoing jurisdiction over the Trusts.  The plaintiffs filed an amended

6

motion for injunctive relief on June 25, 2007, dropping their request for the RAT distribution but demanding that Riley provide information regarding transactions in 2006 and 2007 involving Trust assets; deliver Trust assets to the registry of this court; and cease making further disbursements from the Trusts. (Docket Entry No. 140). The plaintiffs withdrew both the original and amended motions for injunctive relief "without prejudice." (Docket Entry No. 165).

The plaintiffs filed a brief in support of this court's jurisdiction over the claims relating to the three Trusts. (Docket Entry No. 148). Riley and Meynier filed a brief responding to the arguments raised in the plaintiffs' brief, (Docket Entry No. 154), and the plaintiffs filed a reply, (Docket Entry No. 164). The Accountant Defendants filed a motion for final judgment under Federal Rule of Civil Procedure 54(b). (Docket Entry No. 144). The plaintiffs filed a response, (Docket Entry No. 153), and the Accountant Defendants replied, (Docket Entry No. 155). The Lawyer Defendants filed a motion to dismiss or, alternatively, for judgment on the pleadings for failure to state a claim upon which relief can be granted. (Docket Entry Nos. 151, 152). The plaintiffs responded, (Docket Entry No. 158), the Lawyer Defendants replied, (Docket Entry No. 159), the plaintiffs supplemented their response, (Docket Entry No. 166), the Lawyer Defendants replied to the supplemental response, (Docket Entry No. 167), and the plaintiffs filed a second supplemental response, (Docket Entry No. 168).

## II.      Jurisdiction and Abstention

Riley and Meynier argue that this court does not have, or should not exercise, jurisdiction over claims relating to the three Trusts arising from events after the June 2005 state-court verdict.  Riley and Meynier assert that those three Trusts continue to be within the state probate court's jurisdiction.  Riley and Meynier argue that under *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939), or under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), this court either lacks jurisdiction or should decline to exercise jurisdiction over claims relating to those Trusts.  Riley and Meynier do not base their challenge to this court's jurisdiction on a state statute or on the probate exception to federal jurisdiction.  The plaintiffs contend that *Princess Lida* does not apply here because the probate court is no longer exercising jurisdiction over the three Trusts and that abstention is not warranted under *Colorado River.*

### A.      The Legal Standard

#### 1.      *Princess Lida*

In *Princess Lida*, the Supreme Court stated that if suits dealing with the same property are pending in both state and federal court and "the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."  305 U.S. at 466.  The principle that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other" applies to suits brought to administer trusts.  *Id.*  It

8

"is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted."  *Id.*

Courts disagree as to whether *Princess Lida* addresses jurisdiction or abstention. *Compare Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993) (stating that "the Supreme Court in *Princess Lida* formulated its doctrine in terms of subject matter jurisdiction") *with Carvel v. Thomas and Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) ("The Supreme Court spoke of jurisdiction in *Princess Lida*, but never of subject matter jurisdiction . . . by invoking the importance of 'harmonious cooperation' between the federal and state courts, the Court indicated that the doctrine it was expounding was a rule of comity or abstention, rather than one of subject matter jurisdiction.").  It is also unclear whether *Princess Lida* is among the *Colorado River* abstention-related factors or whether *Princess Lida* is a distinct and independent abstention doctrine.  *See United States v. Fairway Capital Corp.*, 483 F.3d 34, 40 n.2 (1st Cir. 2007) ("We have treated the issue of a state court's in rem or quasi in rem jurisdiction as the first factor to be considered in the *Colorado River* abstention analysis, and as such, it is unnecessary to address abstention under *Princess Lida* separately."); *Kenner Acquisitions, LLC v. BellSouth Telecommunications, Inc.*, Civil Action No. 06-3927, 2007 WL 625833, at *3 (E.D. La. Feb. 26, 2007) (Although [*Princess Lida*] predated the *Colorado River* decision, the Supreme Court discussed its application and clearly enshrined its principles within the Colorado River rubric.").  The Fifth Circuit treats the *Princess Lida* principle as one of the factors considered under *Colorado River*.  Fifth Circuit cases consider whether there is a *res* over which one court has assumed jurisdiction as one of

the "six factors that may be considered and weighed in determining whether exceptional circumstances exist that would permit a district court to decline exercising jurisdiction" under the *Colorado River* abstention doctrine, not as a distinct and independent abstention or jurisdictional doctrine. *See, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394-95 (5th Cir. 2006)*; Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).

In describing the *Colorado River* factors, the Fifth Circuit has stated that "[t]he decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a 'mechanical checklist' of these factors, but on a 'careful balancing' of them, 'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Murphy*, 168 F.3d at 738  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  This statement casts doubt on the vitality of the Fifth Circuit's pronouncement, made before the *Colorado River* decision, that the rule announced in *Princess Lida* is a "virtually mechanical *in rem* rule."  *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 677 (5th Cir. 1973); *see also Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980) ("The assumption of jurisdiction over an action *in rem* establishes a bar to any other action *in rem* or *quasi in rem* respecting the same property until the first court's jurisdiction is properly terminated.").  But, as explained below, in this case the result would be the same whether *Princess Lida* is applied as a "mechanical *in rem* rule" or as one factor under the *Colorado River* analysis.

### 2.    *Colorado River*

As a general rule, federal courts have a "virtually unflagging obligation" to exercise

their jurisdiction in proper cases. *Colorado River*, 424 U.S. at 817. "This obligation does not

evaporate simply because there is a pending state court action involving the same subject

matter." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop.*, 48 F.3d 294, 297 (8th Cir.

1995) (citing *Colorado River*, 424 U.S. at 813–14). Federal courts may abstain from deciding

an action to preserve "traditional principles of equity, comity, and federalism." *Alleghany*

*Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990). Whether a federal court should

abstain from hearing an action under one of the abstention doctrines, including *Colorado*

*River,* is in the court's discretion. *Murphy*, 168 F.3d at 738.

*Colorado River* abstention grants a federal court discretion to avoid duplicative

litigation in federal court of a matter more properly decided in parallel litigation in state court.

"[T]he potential for conflict" between a federal action and a parallel state action, standing

alone, does not "justify the staying of the exercise of federal jurisdiction" under the *Colorado*

*River* abstention doctrine. *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297. And a federal

court may not decline to exercise its jurisdiction "as a matter of whim or personal

disinclination." *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (quotations omitted). As

the Supreme Court explained, "[g]iven this obligation [to exercise jurisdiction], and the

absence of weightier considerations of constitutional adjudication and state-federal relations,

the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent

state proceeding for reasons of wise judicial administration are considerably more limited than

11

the circumstances appropriate for abstention [under previously recognized doctrines]." *Colorado River*, 424 U.S. at 818; *accord Federated Rural Elec. Ins. Corp.*, 48 F.3d at 298 n.4 ("Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns."). A federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. Those "exceptional circumstances" must be such that "repair to the State court would clearly serve an important countervailing interest." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 14 (quotations omitted).

     *Colorado River* abstention applies only if there are parallel state and federal court proceedings. *See Brown*, 462 F.3d at 395 n. 7. Suits are parallel if they "involv[e] the same parties and the same issues." *Id.* (quotations omitted). "[I]t may be that there need not be applied in every instance a mincing insistence on precise identity of parties and issues." *Id.* (quotations omitted). Courts frequently define "parallelism" for purposes of *Colorado River* abstention in terms of "substantially the same parties" litigating "substantially the same issues." *See, e.g., Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir.1995). The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *accord Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at \*1 (5th Cir. Aug. 4, 2006)

(unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit).

If state and federal suits are parallel, the federal court must then evaluate whether there are "exceptional circumstances" that make abstention appropriate. These factors include: (1) whether there is a *res* over which one court has established jurisdiction; (2) the inconvenience of the federal forum; (3) whether maintaining separate actions may result in piecemeal litigation; (4) which case has priority – not simply looking at which case was filed first, but focusing on the relative progress made in each case; (5) whether state or federal law controls; and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *See Murphy*, 168 F.3d at 738. These factors are not a "mechanical checklist." *Id.*

### B.    Analysis

Applying *Princess Lida* as a mechanical *in rem* rule to this case would not require this court to dismiss or abstain in favor of the state court probate proceeding. This court has ruled on preclusion grounds that the plaintiffs may proceed only as to claims that were not adjudicated in the state court case. That precludes relitigation of claims relating to the handling of the three Trusts before June 2005. In the third amended petition, the plaintiffs allege facts that relate to the defendants' actions with respect to the three Trusts. For example, the plaintiffs allege facts relating to the failure to pay Alpert the 1996 Trust tax refund. (Docket Entry No. 132 at 37–38). The plaintiffs also allege facts relating to events that

occurred in the state probate court after that court entered judgment.  The final judgment reappointed Riley as trustee of the three Trusts, a ruling now on appeal.  The third amended complaint filed in this case alleges that Riley violated fiduciary duties that arose after the probate court judgment was signed; failed to provide accountings despite continuing to withdraw funds; violated the "safekeeping agreement" approved by the probate court for the RAT; and violated the stay imposed by the Texas appellate court.  (*Id.* at 43–47).  Riley and Meynier emphasize that the plaintiffs raised these same allegations in the state appellate court, which stayed the probate court's judgment and remanded the case to the probate court for findings.  Riley and Meynier argue that the state probate court is continuing to exercise jurisdiction over the three Trusts because it must approve Riley's compensation.  Riley and Meynier also argue that the plaintiffs have asked the state appellate court to exercise continuing jurisdiction over the three Trusts.

The probate court issued a final judgment on March 28, 2006.  Its plenary jurisdiction ended thirty days later.  *See Lane Bank Equip. Co. v. Smith Southern Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000); *In Re Southwestern Bell Tele. Co.*, 35 S.W.3d 602, 605 (Tex. 2000). The plaintiffs do not assert that postjudgment motions extended the probate court's plenary jurisdiction.  *Lane Bank Equip. Co.*, 10 S.W.3d at 310 (stating that the filing of a motion for new trial or a motion to modify, correct or reform the judgment within the initial thirty day period extends the trial court's jurisdiction over its judgment up to an additional seventy-five days, depending on when or whether the court acts on the motions).  Effective January 1, 2006, Texas Property Code § 115.001(c) provides that a "court may intervene in the

14

administration of a trust to the extent that the court's jurisdiction is invoked by an interested person or as otherwise provided by law," and that "[a] trust is not subject to continuing judicial supervision unless the court orders continuing judicial supervision."  Before January 1, 2006, the Code stated that "[u]nless specifically directed by a written order of the court, a proceeding does not result in continuing supervision by the court over the administration of the trust."  The state court's plenary jurisdiction over the case ended over a year and a half ago.  *See Lane Bank Equip. Co.*, 10 S.W.3d at 310.

The defendants argue that even if the probate court's jurisdiction to administer the *res* of the three Trusts has expired, the Texas court of appeals has exercised jurisdiction.  (Docket Entry No. 154 at 12).  Riley and Meynier assert that "[i]n *Princess Lida*, the Supreme Court held that identical jurisdictional powers required control of the trust assets in order to exercise the court's jurisdiction."  In *Princess Lida*, the state trial court was still exercising jurisdiction over the trust.  The issue on appeal to the state appeals court was the validity of the state trial court's injunction barring parties from prosecuting their suit in federal court.  *Princess Lida*, 305 U.S. at 460.  The facts of *Princess Lida* do not provide support for the defendants' contention that the state appellate court must control the assets of the three Trusts so as to preclude this federal suit involving events relating to those Trusts occurring after the state court verdict and judgment.

Applying *Princess Lida* as a mechanical *in rem* rule to this case would not require this court to dismiss for lack of jurisdiction.  This federal case does not depend on or involve exercising jurisdiction over the *res* of the three Trusts that were the subject of the state probate

court trial and the appeal.  This action is for money damages, with two exceptions that do not implicate *Princess Lida*.  The first exception is the request for declaratory judgment that Mark Riley was not legally appointed as the CRUT trustee.  The CRUT was not at issue in the state probate court proceedings.  The second exception is no longer a factor.  The plaintiffs sought an injunction in this court on the basis of the facts alleged in paragraphs 83 to 95 of the third amended complaint, relating to postjudgment events affecting the three Trusts.  But after the state appellate court responded to a similar motion for relief, the plaintiffs withdrew their request for injunctive relief in this court.  As a result, the only claims for relief in this court relating to the three Trusts that were at issue in the state probate court are for money damages for events that occurred after the trial in the state court.  This case is not, "in label or in fact, in rem or quasi in rem."  *Al-Abood*, 217 F.3d at 232 (finding that *Princess Lida* would not bar a federal suit involving a dispute over a *res* that was also the subject of ongoing state court litigation when the federal suit was strictly for money damages because this would not depend on or involve exercising jurisdiction over the *res*).  The *Princess Lida* doctrine does not apply.

Nor is *Colorado River* abstention appropriate in this case.  The threshold requirement is not met because the state and federal court proceedings are not parallel.  *See Brown*, 462 F.3d at 395 n. 7.  This case involves different issues and parties than the state probate court case.  The probate court case did not involve the plaintiffs' allegations that Riley had committed malpractice with respect to business dealings unrelated to the Trusts.  The probate court case did not involve the CRUT.  With the limited exceptions discussed above, the

probate court case did not resolve issues relating to transactions and events after the verdict. The probate court case did not include as defendants the Lawyer Defendants or the Accountant Defendants.  Although the Trust beneficiaries had initially filed claims against the Accountant Defendants, these were dismissed before trial.  This court has held that the plaintiffs are precluded from asserting in this federal case claims that were tried and decided by the probate court.  The state-court litigation did not dispose of the issues raised in this federal case.

Although the fact that the state and federal suits are not parallel means that this court need not decide whether "exceptional circumstances" exist to justify abstention, the record is clear that such circumstances are not present.  This federal court is not asserting jurisdiction over a trust *res* over which the state court is also exercising jurisdiction.  Abstention is not necessary to avoid conflicting court orders over ownership or disposition of the *res* of the Trusts.  *See Al-Abood*, 217 F.3d at 232 (holding that *Princess Lida* does not apply if the federal action "does not depend on or involve exercising jurisdiction over the *res*.").

The second factor examines the inconvenience of the federal forum to determine whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum." *Moses H. Cone*, 460 U.S. at 19.  Relevant factors are the locations where the suits are pending, the location of the evidence or witnesses, and the availability of compulsory process. *Evanston Ins. v. Jimco, Inc.*, 844 F.2d at 1185, 1191 (5th Cir. 1988). There is no contention that the federal forum is relatively less convenient than the state probate court.

17

The next factor, and the consideration that was "paramount in *Colorado River* itself," is the "danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston*, 844 F.2d at 1192. "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Invs., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000). This case does not present a risk of piecemeal litigation.

Consideration of the order in which jurisdiction was obtained "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Because this federal case involves issues different from those raised in the state court, this factor does not weigh in favor of abstention.

The fifth factor asks whether and to what extent federal law provides the rule of decision on the merits. The plaintiffs have asserted federal as well as state-law claims in this case. "The absence of a federal law issue does not counsel in favor of abstention . . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender

only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26). The fifth factor does not weigh in favor of abstention.

The sixth factor asks whether the state-court action will adequately protect the rights of the federal-court plaintiff. This factor "can only be a neutral factor or one that weighs against, not for, abstention. A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston*, 844 F.2d at 1193. The sixth factor does not weigh in favor of abstention.

In summary, this court has jurisdiction over the trust-related claims in the third amended complaint and abstention is not warranted.

## III.    The Accountant Defendants' Motion for Final Judgment Under Rule 54(b)

This court granted summary judgment dismissing claims against the Accountant Defendants. (Docket Entry No. 127). When this court granted summary judgment, the allegations against the Accountant Defendants were that they conspired with Riley to obtain funds from Alpert by participating in Riley's interception of a federal tax return refund check for one of the Trusts by "forwarding the tax refund to Riley for execution" when that refund should have been paid to Alpert as reimbursement for money he had paid on behalf of the Trusts, that they had assisted Riley in obtaining confidential information about Alpert, and that they had provided Alpert's confidential documents to the IRS in response to a grand jury subpoena. (*Id*. at 14).

Under Rule 54(b), "When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Fed. R. Civ. P. 54(b).  Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (quoting *PYCA Indus. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir.1996)).  A court should consider factors such as: "(1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."  *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003); *accord U.S. General, Inc. v. Albert*, 792 F.2d 678, 691 n.3 (7th Cir. 1986); *Allis-Chalmers Corp. v. Phila. Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975).

The Accountant Defendants argue that there is no reason to delay entering final judgment against them.  (Docket Entry No. 144 at 2–3).  The plaintiffs oppose issuance of final judgment as to the claims against the Accountant Defendants.  (Docket Entry No. 153).

The plaintiffs argue that final judgment is inappropriate because they have learned of additional payments from the three Trusts that Riley made to the Accountant Defendants in April and November 2006, which could serve as the basis for new claims.

The record does not support entry of judgment as to the Accountant Defendants at this stage of the case.  Claims against Riley and Meynier remain to be resolved.  Some of these claims arise out of the same facts as the claims against the Accountant Defendants.  "It is uneconomical for an appellate court to review facts on appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties."  10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2659 (3d ed. 1998).

The Accountant Defendants' motion for entry of final judgment under Rule 54(b) is denied at this time.

## IV.     The Lawyer Defendants' Motions to Dismiss under Rule 12(b)(6) and 12(c)

The Lawyer Defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted or alternatively, for judgment on the pleadings under Rule 12(c).  (Docket Entry No. 151).

The plaintiffs' third amended complaint alleges that the Lawyer Defendants – who were retained by Riley – engaged in the following conduct:

> [T]hrough his agents the Attorney Defendants, Riley voluntarily approached the IRS and negotiated with the IRS to become an anonymous paid informant.  Beginning in early 1999, Riley's

21

agents transmitted and negotiated numerous drafts of what was called a "Confidential Informant Reward Agreement" ("CIRA") with the IRS.   One such agreement is attached hereto as Exhibit 4.   The Attorney Defendants also acted as the information conduit with the IRS, thus actually transmitting the false information being outlined by Riley.  The Hux documents revealed that communications between the Attorney Defendants, prepared by Riley, appear to have been sent, at a minimum, to the IRS by mail in both July and August, 1999.  The Hux documents also revealed similar communications were sent, at a minimum, by fax to the IRS on July 12, 1999 and August 10, 1999.  Alpert believes the Attorney Defendants were also to share in the amounts to be paid by the IRS.

(Docket Entry No. 132 at 26).  Based on these allegations, the complaint asserts federal-law causes of action against the Lawyer Defendants under RICO, 18 U.S.C. §1962(c), and the Internal Revenue Code, §6103 and §7431, and state-law causes of action for aiding and abetting a breach of fiduciary duty and for civil conspiracy to defraud the plaintiffs and violate fiduciary duties owed to the plaintiffs.  (Docket Entry No. 132 at 48–50, 53–55).  This court previously granted summary judgment as to the causes of action under the Internal Revenue Code.  (Docket Entry No. 127).  The Lawyer Defendants argue that the plaintiffs have failed to meet the standards necessary to plead a RICO violation and have failed to state a claim under state law for breach of fiduciary duty and conspiracy because the Lawyer Defendants owed no duty to the plaintiffs.

### A.    The Legal Standard Under Rules 12(b)(6) and 12(c)

The same standards govern motions to dismiss under Rule 12(b)(6) and Rule 12(c). *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  Rule 12(b)(6) allows dismissal if a plaintiff fails

"to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  The Supreme Court recently overruled the longstanding rule announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007).

Under *Twombly*, a court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, No. 07-30098, 2007 WL 4260892, at *1 (5th Cir. Dec. 6, 2007) (quoting *Twombly*, 127 S. Ct. at 1974); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  "[A] plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Bradley v. Phillips Petroleum Co.*, No. H-05-3912, 2007 WL 4443876, at *2 (S.D. Tex. Dec. 18, 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65). "'Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.'"  *Id.* (quoting *Twombly*, 127 S. Ct. at 1965 n.3).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65); *Sonnier*,

23

2007 WL 4260892, at *1 (quoting *Twombly*, 127 S.Ct. at 1965). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S. Ct. at 1966) (quotations omitted). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See Twombly*, 127 S. Ct. at 1967-70. The Second Circuit has summarized the *Twombly* decision as endorsing "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before the action is dismissed with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A plaintiff should be denied leave to amend a complaint if the court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-*

*Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted); *see also Great Plains Trust Co.*, 313 F.3d at 329.

Claims based on fraud must satisfy the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Pleading the elements of fraud with particularity requires a plaintiff to specify "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

### B.      The RICO and the Fraud Claims Against the Lawyer Defendants

A claim under 18 U.S.C. § 1962 entails "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In re MasterCard Intern. Inc.*, 313 F.3d 257, 260 (5th Cir. 2002).  "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.  The predicate acts can be either state or federal crimes." *In re MasterCard*, 313 F.3d at 261–62.  The plaintiffs allege that the predicate offenses for their RICO claims are mail fraud and wire fraud, 18 U.S.C. §§ 1341, 1343.  (Docket Entry No. 132 at 48-49).

RICO creates a private civil cause of action for a person "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 439 (5th Cir. 2000).  "The 'by reason of' language of RICO

has been interpreted . . . to require a showing that the fraud was the 'but for' cause and 'proximate' cause of the injury." *Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). The Fifth Circuit has interpreted *Holmes* to "require[] a causal connection between the predicate mail or wire fraud and a plaintiff's injury that includes 'but for' and 'proximate' causation." *Id.*

RICO claims resting on fraud allegations must meet the Rule 9(b) pleading requirement. *See Williams*, 112 F.3d at 177. When civil damages are sought under RICO for injuries resulting from fraud, the plaintiff must also plead facts that show reliance on the fraud. *See Sandwich Chef of Texas*, 319 F.3d at 219 ("RICO fraud cases 'require a showing of detrimental reliance *by the plaintiff*, which is consistent with *Holmes*' admonition that federal courts employ traditional notions of proximate cause when assessing the nexus between a plaintiff's injuries and the underlying RICO violation.'"); *Summit Properties Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 559 (5th Cir. 2000) (stating that in a criminal RICO case "the government can punish unsuccessful schemes to defraud because the underlying mail fraud violation does not require reliance, but a civil plaintiff 'faces an additional hurdle' and must show an injury caused 'by reason of' the violation.").

This court previously found that the RICO allegations in the plaintiffs' second amended complaint failed to meet the applicable pleading requirements. One of the deficiencies was that the plaintiffs' allegations that "the wire and mail fraud included 'electronic banking transactions and interstate telephone calls to the Plaintiffs to and from Texas, Arizona, Colorado, and Florida'" were not sufficient because "the plaintiffs do not

plead that they relied on particular communications, causing injury. Rather, they allege that many of the acts they challenge and the injuries they allege occurred after Riley was no longer working for Alpert." (Docket Entry No. 127 at 35). This court allowed the plaintiffs to amend their complaint. (*Id.* at 36). In the third amended complaint, the plaintiffs set out more specific allegations of mail and wire fraud against the Lawyer Defendants. The plaintiffs state that "[b]eginning in early 1999, [the Attorney Defendants] transmitted and negotiated numerous drafts of what was called a 'Confidential Informant Reward Agreement' ('CIRA') with the IRS," that "communications between the Attorney Defendants, prepared by Riley, appear to have been sent, at a minimum, to the IRS by mail in both July and August, 1999," and that "similar communications were sent, at a minimum, by fax to the IRS on July 12, 1999 and August 10, 1999." (Docket Entry No. 132 at 26). These allegations do not overcome the previously identified pleading deficiency. The alleged communications occurred long after Alpert had terminated his relationship with Riley in October 1998. (Docket Entry No. 124, Ex. A at 1). The plaintiffs' third amended complaint does not explain how they relied on the alleged communications. The plaintiffs argue that discovery should be allowed before dismissing the RICO claim. (Docket Entry No. 158 at 5). But the plaintiffs have not shown how discovery would enable them to overcome their failure to state the basis for the existence, nature, and extent of their own reliance.

The plaintiffs also assert a state-common law claim for conspiracy to commit fraud. The Rule 9(b) pleading standard, with the 12(b)(6) pleading requirements set out in *Twombly*, applies to allegations of state-law fraud and conspiracy to commit fraud. *See Williams*, 112

27

F.3d at 177 ("We see no principled reason why . . . state claims of fraud should escape the pleading requirements of the federal rules.").  A civil conspiracy involves: (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means) (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).  The elements of fraud are:  (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).  The Lawyer Defendants' alleged involvement with Riley began long after Alpert fired Riley in October 1998.  (Docket Entry No. 124, Ex. A at 1).  The plaintiffs' third amended complaint does not allege reliance on any misrepresentations by the Lawyer Defendants.  The plaintiffs' third amended complaint fails to state a claim for conspiracy to commit fraud.

**C.    The Claims for Aiding and Abetting a Breach of Fiduciary Duty**

The Lawyer Defendants argue that the plaintiffs' state-law claim for aiding and abetting a breach of fiduciary duty should be dismissed because Texas law provides that attorneys are not liable to third parties for actions taken in the course of representing a client. (Docket Entry No. 152 at 7).  The plaintiffs respond that the Lawyer Defendants' actions were outside the scope of their legal representation of Riley.  (Docket Entry No. 158 at 2).

Under Texas law, attorneys are generally not liable to a third party for actions taken in connection with representing a client. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.–Houston [1st Dist.] 2005, pet. denied); *Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.–Dallas 2003, no pet.); *Butler v. Lilly*, 533 S.W.2d 130, 131-34 (Tex. App.–Houston [1st Dist.] 1976, writ dism'd).  "A lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages."  *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.–Houston [1st Dist.] 1985, no writ*).  "*This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit" and is designed to promote zealous legal representation.  *Alpert*, 178 S.W.3d at 405.  "If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest."  *Id.*

An attorney's protection from liability arising out of her representation of a client has limits.  An attorney's immunity from such suits is "qualified" in that an attorney may be liable to a third party despite the absence of legal privity or independent duty.  *Alpert*, 178 S.W.3d at 406; *Likover*, 696 S.W.2d at 472.  In *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472-74 (Tex. App.–Houston [1st Dist.] 1985, no writ), an attorney was held liable to a third party for damages for advising his client to engage in fraudulent and coercive conduct.  *Likover* involved the sale of an apartment complex.  The sellers lied about the status of architectural plans and specifications they promised to provide and failed to convey title to

29

the property.  *Id.* at 469-71.  The sellers' attorney advised his clients not to convey title to the

property to gain leverage over the buyer.  The sellers' attorney informed the buyers that they

would have to pay an additional $400,000 over the contract amount to complete the

transaction.  *Id.* at 473-74.  The *Likover* court held that on these facts, the attorney could be

held liable to the buyers for conspiracy to commit fraud because "where a lawyer acting for

his client participates in fraudulent activities, his action in so doing is 'foreign to the duties

of an attorney.'"  *Id.* at 472-74 (quoting *Poole v. Houston & T.C. Ry.*, 58 Tex. 134, 137

(1882)); *accord Toles* at 911 ("When an attorney acting for his client participates in fraudulent

activities, his action is 'foreign to the duties of an attorney.'").  The court stated that "an

attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he

knowingly enters into a conspiracy to defraud a third person," and "could not shield himself

from liability on the ground that he was an agent, because no one is justified on that ground

in knowingly committing a willfull [sic] and premeditated fraud for another."  *Likover*, 696

S.W.2d at 472.

In *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App.–Houston [1st

Dist.] 2005, pet. denied), the court addressed attorney liability to third parties in a suit

involving several of the same parties and facts as the present case.  In that case, Alpert sued

the law firm that represented Riley in the state-court litigation over the three Trusts.  The court

summarized the allegations and relief sought in that case:

> a. Appropriating proprietary, confidential information protected
> by the attorney-client privilege and the attorney work product
> privilege and utilizing that information to make scandalous

representations to the Internal Revenue Service and perhaps to other governmental entities.   This action amounted to self-dealing in that Riley was interested in collecting monies from the Internal Revenue Service for making complaints about his clients and also to pressure Alpert into paying money to him and the Defendants.  The Defendants have stated that they only want money paid to them and to Riley in order for Riley to cease this inappropriate activity;

b.  By turning Alpert over to the Internal Revenue Service and perhaps other governmental entities, Riley and the Defendants knew that Riley was breaching his fiduciary duty of "perfect fairness" on the part of an attorney to his clients;

c.  With the assistance of the Defendants, Riley did not advise the Plaintiffs of the actions that he was taking with the proprietary and confidential information thereby aiding and abetting Riley to breach the duty of discretion, the duty of loyalty and the duty to make full disclosure of material facts to his clients;

d.  By attempting to blackmail the Plaintiffs into paying money to them, the Defendants aided and abetted Riley in breaching his duty of loyalty to the Plaintiffs and his duty to place the interest of the Plaintiffs above his own.  Riley and the Defendants used this as an advantage of their personal positions to gain a benefit for themselves at the expense of the Plaintiffs/beneficiaries;

e.   The Defendants aided and abetted Riley in a conflict of interest wherein they allowed him to continue to sue the Plaintiffs and to make claims against the Plaintiffs utilizing confidential and proprietary information which Riley gained from the attorney-client privilege and from his attorney work product while representing the Plaintiff in order to extract attorney's fees for the Defendants and so called "trustee fees" for Riley;

f.   The Defendants aided and abetted Riley in breaching his fiduciary duty of making a full and accurate confession of all his fiduciary activities, transaction, profits and mistakes all of which is paramount to fraudulent concealment.  The Defendants aided and abetted Riley in withholding and concealing the fact that he

31

was turning Alpert over to government entities in order to obtain monies for himself and the Defendants;

g.  The Defendants aided and abetted Riley in an unlawful civil conspiracy by filing lawsuits, complaints and other allegations utilizing information and documents learned and obtained from a confidential relationship in order to "shakedown" the Plaintiffs so that monies would be paid to the Defendants and to Riley;

h.  The Defendants aided and abetted Riley in making statements such as there were never any loans by Alpert to the Trusts when Riley and the Defendants knew that such statements were false because Riley noted in his own handwriting in his notes as a fiduciary to the Plaintiffs from 1994 through 1998 that loans in fact were made.  Again, the Defendants did this in order to pressure Alpert into paying them money and Riley money;

i.  The Defendants aided and abetted Riley in suing and attacking the Plaintiffs with respect to the Daniel Alpert Trust, the Roman Alpert Trust, The 1996 Childrens' Trust and the Alpert Family Charitable Remainder Unitrust and the Alpert Family Foundation Trust by stating that other people had engaged in wrong doing [sic] with respect to the securities trades of these Trusts when it was known and proved through Riley's own handwriting that he was aware of all the trades, authorized the trades and in all situations, advised that the trades should be made.  Again, the Defendants aided and abetted Riley in taking confidential information and information protected by the attorney-client privilege to pressure the Plaintiffs into paying the Defendants money;

j.  The Defendants aided and abetted Riley in breaching his fiduciary duties to the Plaintiffs by diverting more than Ninety Five Thousand Dollars ($95,000.00) of income tax returns from the Internal Revenue Service which were due to the Trusts and taking a substantial amount of that money and paying it to Riley and the Defendants;

k.  The Defendants knew that Riley had directed Larry St. Martin to book the monies forwarded by Alpert to the Trusts as loans and not gifts, yet they aided and abetted Riley to claim that the

32

loans were gifts, thereby subjecting Alpert to Internal Revenue Service gift tax.  All of this was done in an effort to force Alpert into paying money to Riley and the Defendants; and,

l.  The Defendants knew that Riley had failed [to] timely and properly file tax returns for the Daniel Alpert Trust, The Roman Alpert Trust and the Alpert Family Charitable Trust. Nonetheless, they aided and abetted Riley in claiming that he had not breached his fiduciary duties in this regard when they knew that he had.

*Id.* at 403–404.  The court dismissed the claim for aiding and abetting a breach of a fiduciary duty because the alleged acts "occurred during" and were not "independent of [the law firm's] representation of Riley."  *Id.* at 407.  The court dismissed the claim for conspiracy to defraud because "the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations" are "acts taken and communications made to facilitate the rendition of legal services," not conduct "foreign to the duties of an attorney" even though Alpert alleged that this conduct was fraudulent.  The court stated: "such acts fall within the context of Crain Caton discharging its duty to represent Riley and are not the basis for an actionable fraud claim against attorneys for whom Alpert alleges neither (1) any legal privity, nor (2) any independent duty to Alpert, together with justifiable reliance upon any representation or act made by Crain Caton."  *Id.* at 408.  The *Alpert* court held that actions are "foreign to the duties of an attorney" only when "a lawyer participates in *independently* fraudulent activities."  *Id.* at 406 (emphasis added).  To be liable under this formulation, an attorney must "knowingly commit[] a fraudulent act outside the scope of his legal representation."  *Id.*  Under this approach, according to the court, a lawyer "cannot

33

shield his own willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client." *Id.*.

The plaintiffs argue that the "qualified immunity" rule of *Likover* and *Alpert* does not apply here because the claims against the Lawyer Defendants do not arise from their representation of Riley in litigation. (Docket Entry Nos. 158 at 2-4, 168 at 4-5). Most Texas cases on attorney qualified immunity from third-party lawsuits have dealt with third parties suing opposing counsel for conduct that occurred during the course of litigation. But Texas cases do not limit an attorney's protection against liability to actions taken in the course of representing a client in litigation and the basis for the decisions applies to the provision of legal services outside the litigation context. *See, e.g.*, *Alpert*, 178 S.W.3d at 405; *Renfroe v. Jones & Associates*, 947 S.W.2d 285, 287–88 (Tex. App.–Fort Worth 1997, writ denied); *Bradt v. West*, 892 S.W.2d 56 (Tex. App.–Houston [1st Dist.] 1994, writ denied). Although the *Likover* court framed the issue before it as "whether an attorney-at-law acting for a client in settlement negotiations can be held liable for damages as a co-conspirator," 696 S.W.2d at 469, several of the attorneys' actions in that case predated or were not part of settlement negotiation. Here, the Lawyer Defendants were not retained by Riley to represent him in the litigation against the plaintiffs, but when the Lawyer Defendants committed the acts made the basis of the claims, Alpert and Riley were adverse parties in a bitterly contested suit. The fact that the Lawyer Defendants were not representing Riley in his litigation against Alpert when the acts at issue occurred does not defeat the application of the Texas "qualified immunity" rule.

The plaintiffs also argue that the Lawyer Defendants' actions were not connected with providing legal services to their client, Riley. (Docket Entry Nos. 158 at 4-5,166 at 2, 168 at 7). An attorney is not protected from liability to third parties "for every tort committed by a lawyer that may be tangentially related to his professional role or which may occur during litigation." *Dixon Fin. Servs., Ltd. v. Greenberg, Eden, Siegmyer & Ashman, P.C.*, No. 01-06-00696-CV, 2007 WL 4099512, at *7 (Tex. App.–Houston [1st Dist.] Nov. 15, 2007, no pet.). For example, an attorney who assaults the opposing party during trial or contract negotiations is not protected from liability to that party. *Id.* In this case, the Lawyer Defendants represented Riley in negotiating an informant agreement with the IRS. (Docket Entry No. 152 at 11). The plaintiffs argue that the allegations against the Lawyer Defendants do not arise from "advice, if any, the Attorney Defendants may have given Riley concerning his own possible liability to the IRS." The plaintiffs assert that their claims against the Lawyer Defendants are based solely on the "attorneys acting as a shield to disclosure and a conduit for delivery of documents" by "acting as a signatory to an agreement with the IRS so that Riley's identity could remain undisclosed [and] acting as a delivery agent between Riley and the IRS." (Docket Entry No. 168 at 7). In short, the plaintiffs argue that the Lawyer Defendants were not providing legal services when they engaged in the acts at issue.

"In general, the practice of law embraces all advice to clients and all action taken for them in matters connected with the law." *Newton v. Delespine*, No. 12-05-00113-CV, 2006 WL 3458829, at *3 (Tex. App.-Tyler Dec. 1, 2006, pet. denied); *accord Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41 (Tex. App.-Dallas 1987, writ

denied).  The facts alleged by the plaintiffs are that the Lawyer Defendants acted as legal representatives for Riley in negotiating and implementing a binding legal agreement with the IRS.  The alleged unlawful actions were taken on Riley's behalf in matters connected with negotiating the agreement.  The facts show that the Lawyer Defendants were providing legal services to Riley.  The plaintiffs cannot avoid the rule of *Likover* or *Alpert* on the basis that the Lawyer Defendants were not acting as lawyers when they committed the acts at issue.

The plaintiffs' state-law claims for aiding and abetting Riley in breaching his fiduciary duties to the plaintiffs and in conspiring with Riley to breach his fiduciary duties to the plaintiffs are barred.  The alleged actions by the Lawyer Defendants occurred in the course of their legal representation of Riley.  The plaintiffs have not met the requirements to plead that the Lawyer Defendants' alleged acts were fraudulent.  The Lawyer Defendants' motion to dismiss is granted.

## IV.    Conclusion

This court finds that it has jurisdiction over the claims asserted in the third amended complaint and declines to abstain under the *Colorado River* abstention doctrine, denies the

Accountant Defendants' motion for final judgment, and grants the Lawyer Defendants' motion to dismiss.

      SIGNED on January 31, 2008, at Houston, Texas.

                            Lee H. Rosenthal
                     United States District Judge