IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ALPERT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-CV-3774 |
| | § | |
| MARK R. RILEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The defendants, Mark A. Riley and Dixie Meynier, have objected to many of the plaintiffs'

interrogatories and document requests.  The defendants invoke grand-jury secrecy under Rule

6(e)(2) of the Federal Rules of Criminal Procedure; an Internal Revenue Service privilege under 26

U.S.C. § 6103; informant-identity privilege; attorney-client privilege; and attorney work-product

protection.   At this court's request, the defendants submitted a brief in support of their objections

and submitted for *in camera* review documents that they assert support their objections.  (Docket

Entry No. 207).  The plaintiffs, Robert Alpert and his sons, Roman Alpert and Daniel Alpert, have

responded, arguing that none of the asserted privileges or protections apply.  (Docket Entry No.

215).

Based on the pleadings, the briefs, the parties' arguments, the materials submitted, and the

applicable law, this court overrules the objections the defendants assert.  Neither Rule 6(e) nor the

other asserted privileges and protections provide a blanket basis for the defendants' refusal to

respond.  To the extent the defendants contend that particular communications or documents are

subject to attorney-client privilege or work-product protection, the defendants must identify them

in a detailed privilege log that complies with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, and must otherwise respond to the discovery requests, by **May 15, 2009**.

The reasons for these rulings are explained in detail below.

## I.    Background

The plaintiffs, Robert Alpert and his sons, Roman Alpert and Daniel Alpert, have been seeking discovery from the remaining defendants in this case, Mark R. Riley and his former legal assistant, Dixie G. Meynier, for months, beginning long before a state probate court judgment in Riley's favor was reversed on appeal on June 5, 2008 and continuing since then.  Riley is a lawyer and an accountant who worked for Alpert and entities that Alpert owned or controlled from June 1994 to October 1998.  The plaintiffs raise federal claims under the civil RICO statute, 18 U.S.C. § 1962(c), and §§ 6103 and 7431 of the Internal Revenue Code, against Riley and Meynier; state-law claims for negligence and gross negligence, negligent misrepresentation, breach of fiduciary duty, and conversion against Riley; and state-law claims for fraud, aiding and abetting a breach of fiduciary duty, and civil conspiracy against Riley and Meynier.  These allegations are based on actions after June 8, 2005 relating to the 1990 Roman Alpert Trust (RAT) and Daniel Alpert Trust (DAT), and the Robert Alpert 1996 Children's Trust (the "Children's Trust") (together, the "three Trusts"); actions relating to the Alpert Family Charitable Remainder Unitrust (the "CRUT"), which Alpert formed in 1997; actions relating to Alpert's other finances and businesses; and Riley's involvement in providing confidential information about his former client, Alpert, to the IRS, allegedly for compensation.

The plaintiffs sent two sets of interrogatories and production requests to Riley and one set of interrogatories and production requests to Meynier.  (Docket Entry No. 215, Exs. 1, 2, 3).[1] Although only a minority of the discovery requests specifically refer to Riley's involvement as a confidential informant for the IRS, the defendants emphasize these requests in objecting to all the discovery sought.

In the Third Amended Complaint, the plaintiffs alleged that in 1999, Riley, through his lawyers, Robert Scardino and Scot Courtney, "voluntarily approached the IRS and negotiated with the IRS to become an anonymous paid informant."  (Docket Entry No. 132 at 26).  According to the plaintiffs, Riley's plan was to profit at both ends, charging Alpert for legal and accounting services and then supplying the IRS with details of transactions that he, as Alpert's lawyer and accountant, had structured, mischaracterizing those transactions as tax fraud and reaping an informant's reward. (*Id.* at 22–23).  The plaintiffs attached a copy of an unsigned, draft "Confidential Informant Award Agreement" ("CIRA") recovered from the computer of Robert Hux, who shared office and a computer network with Riley.  (*Id.*, Ex. 4).  The draft CIRA stated that "[t]his Informant has voluntarily upon his/her own initiative approached the IRS, through legal counsel offering to disclose the information in his/her possession" about "Taxpayer A and Taxpayer B" for the tax years 1992 through 1998.  The CIRA provided for a reward of "15 percent (15%) of the net taxes, fines and penalties (but not interest) collected," not to exceed $7,500,000.  (*Id.*).  According to the plaintiffs, Riley admitted in probate court that a signed version of the CIRA is in Scardino's possession.  Scardino refused to produce the document.  (*Id.* at 22 n.3).  Hux stated in an affidavit

---

[1]   These discovery requests are titled:  "Plaintiff, Robert Alpert's, First Set of Interrogatories and Request for Production of Documents to Mark R. Riley," dated September 10, 2007; "Plaintiff, Roman Alpert's, First Set of Interrogatories and Request for Production of Documents to Mark R. Riley," dated September 10, 2007; and "Plaintiff, Robert Alpert's, First Set of Interrogatories and Request for Production of Documents to Dixie G. Meynier," dated September 10, 2007.

that Riley showed him drafts of the CIRA and analyses of Alpert's brokerage statements and other financial documents that Riley intended to provide to the IRS.  (*Id.*, Ex. 1).  According to the plaintiffs, files on Hux's computer revealed that Riley gave the IRS a "laundry list" of allegations that Alpert had committed tax fraud in his business entities and ventures and in the three Trusts and CRUT, and that Riley "tendered an enormous amount of documents concerning Alpert to the IRS." (*Id.* at 20, 27 and Ex. 10).  The IRS, according to the plaintiffs, "took no actions against Alpert as a result of Riley's efforts other than to request certain reviews, and all of Alpert's returns were accepted, as filed, after those reviews."  (*Id.* at 37).

The government served a grand-jury subpoena on Riley on January 22, 2001 that sought production of documents by February 21, 2001.  The United States Attorney's office stated in writing that "[p]rosecution of Mr. Alpert was declined by the Department of Justice on August 9, 2004," and an Assistant United States Attorney confirmed in court on February 14, 2005, that there is no ongoing investigation.  (Docket Entry No. 207, Exs. K at 4; L-B).

The defendants argue that if Riley served as a confidential informant and complied with a federal grand-jury subpoena, "the communications are subject to the Government's privileges which Riley is neither permitted nor authorized to waive."  (*Id.* at 2).  The defendants claim grand-jury secrecy under Rule 6(e)(2), Internal Revenue Service privilege under 26 U.S.C. § 6103, and informant-identity privilege.  The defendants also contend that a Texas probate court has already ruled against the plaintiffs on similar requests in a case involving the three Trusts.[2]  (Docket Entry

---

[2]     Cause No. 305,232–401, *In re: The Roman Merker and Daniel James Trusts, Mark Riley, Trustee v. Robert Alpert*, Probate Court No. 2, Harris County, Texas (regarding the RAT and DAT trusts); Cause No. 325013, *The Robert Alpert 1996 Children's Trust – Dennis Proctor, as Trustee of the Robert Alpert 1996 Children's Trust v. Mark Riley and Lolley & Fontenot, P.C.*, Probate Court No. 1, Harris County, Texas (regarding the Children's Trust) (consolidated with Cause No. 305,232–401).

4

No. 207, Ex. G).  On these bases, as well as attorney-client privilege and work-product protection, Riley has not provided substantive answers to the interrogatories [3] and Riley and Meynier have not produced documents[4] or a privilege log.  The defendants also contend that a confidential settlement agreement and protective order with Hux impact their ability to respond to certain requests.  (Docket Entry No. 215, Ex. 1, Doc. Req. Nos. 26, 27).

Most of the plaintiffs' discovery requests seek information and documents generated in the course of Riley's representation of Alpert and appear unrelated to an IRS investigation of Alpert or a grand-jury proceeding.  Certain requests, however, ask about Riley's role as an IRS informant and before the grand jury or seek documents relating to these proceedings.  Other requests seek the terms of Riley's role as a confidential informant for the IRS – including compensation – and the circumstances of Riley's relationship with his lawyers, Scardino and Courtney.  The defendants' asserted secrecy obligations and privilege or protection claims do not support their blanket refusal to respond to discovery.

## II.    Rule 6(e) of the Federal Rule of Criminal Procedure

### A.    No Secrecy Obligation on a Grand-Jury Witness

---

[3]    Meynier has answered the four interrogatories posed to her, and the plaintiffs do not presently raise objections to her answers.  (Docket Entry No. 215, Ex. 2).

[4]    In their discovery objections, the defendants contend that Riley may already have produced information responsive to these requests in the state probate suit, or in another Texas probate action relating to the CRUT.  But the plaintiffs counter – and the defendants' briefing in support of their privilege objections does not dispute – that Riley produced no documents in the probate cases, and that the documents referenced in the defendants' discovery objections "are either pleadings or motions filed in the probate case or documents which were produced by Robert Alpert," and are not responsive to their discovery requests.  (Docket Entry No. 215 at 2, Ex. 4).

The defendants argue that "grand-jury secrecy" under Rule 6(e)(2) prevents them from disclosing any information or documents that were produced to or that otherwise relate to a grand-jury proceeding. Rule 6(e)(2) provides, in relevant part:

> **(2)  Secrecy.**
>
> (A)  No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).
>
> (B)  Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:
>
> (I)  a grand juror;
>
> (ii)  an interpreter;
>
> (iii)  a court reporter;
>
> (iv)  an operator of a recording device;
>
> (v)  a person who transcribes recorded testimony;
>
> (vi)  an attorney for the government; or
>
> (vii)  a person to whom disclosure is made under Rule 6(e)(3A)(ii) or (iii) [government personnel]

FED. R. CRIM P. 6(e)(2).

Persons who serve as grand-jury witnesses or submit documents to a grand jury are not included in this list. "[D]espite the stringent language of the federal rule imposing secrecy on grand-jury proceedings, witnesses are pointedly omitted from the list of those bound by its provisions. . . . [W]itnesses are free to divulge their testimony as they see fit after testifying." 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 113 (6th ed. 2006); s*ee also* FED. R. CRIM. P. 6, Committee Note ("The rule does not impose any obligation of secrecy on witnesses."); *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1982) ("Witnesses are not under the prohibition unless they also happen to fit within one of the enumerated categories."); *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980) ("Rule 6(e) does not prevent disclosures by a witness who testifies before the grand jury."); *In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03-2038, 2004 WL 2743591,

6

at *11 (E.D. Pa. Nov. 29, 2004) ("Rule 6(e)(2) does not impose secrecy obligations on a witness who supplies documents to a grand jury proceeding.").

The defendants do not argue that they fall into any of the enumerated categories in Rule 6(e)(2)(B). Contrary to the defendants' argument, Rule 6(e) does not impose a requirement of secrecy on them with respect to information or documents they provided to the grand jury years ago. As one court stated:

> Simply put, defendants are *not* in the Rule 6(e) list. . . . [A] witness appearing before a grand jury is thereafter free to hold a press conference and reveal everything that was asked of him or her and what his or her answers were. The fact of any subpoena and its requests may likewise be published by the recipient. Since defendants are free to volunteer the information, a court may compel a disclosure. Nothing in Rule 6(e) is otherwise.

*In re Graphics Processing Units Antitrust Litig.*, No. 06-7417, 2007 WL 2127577, at *2 (N.D. Cal. July 24, 2007); *see also In re Wirebound Boxes Antitrust Litig.*, 126 F.R.D. 554, 555–56 (D. Minn. 1989) (Because grand-jury witnesses "are not among the parties enumerated in Rule 6(e)(2)[, they] are required to release documents which were produced independent of the grand jury.").

Although some courts have imposed restrictions on grand-jury witnesses under Rule 6(e), these restrictions have been imposed on the ground that the discovery sought would reveal the grand jury's deliberative process and revelation of that process could jeopardize related proceedings. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, No. 1536, 2004 WL 769376, at *5 (N.D. Ill. Apr. 9, 2004) (denying a motion to compel in a civil case documents produced to an ongoing, related grand-jury investigation because such disclosure could disclose the "direction and focus" of the investigation); *In re Caremark Int'l, Inc. Sec. Litig.*, No. 94-cv-4751, 1995 WL 557496, at *3 (N.D. Ill. Sept. 14, 1995) (denying a motion to compel production of materials that the witness received from the grand

jury, reasoning that these "would disclose the workings of the grand jury" that had returned an indictment against two of the defendants in a related and ongoing criminal case). In *In re Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981), a case sometimes described as recognizing a witness's "grand-jury privilege,"[5] the Fifth Circuit upheld a district court's denial of the plaintiff's motion to conduct a prelitigation deposition of a witness who was testifying in an ongoing grand-jury investigation about the plaintiff. *Id.* at 1110. The Fifth Circuit recognized that "[w]itnesses before the grand jury are not obligated to keep silent" but held that given the ongoing investigation, "the [plaintiff's] need for the deponent's information in the preparation of his civil case must be subordinated to the pending grand jury's interest in secrecy." *Id.* at 1111, 1113 n.9. The Fifth Circuit noted that the district court had invited the plaintiff to renew its discovery request "pending the outcome of the criminal investigation." *Id.* at 1111.[6]

In the present case, there is no basis to conclude that the discovery the plaintiffs seek would reveal the grand jury's deliberative process or jeopardize any ongoing investigation or proceeding. The grand-jury subpoena was dated January 2001; the government's investigation closed in August 2004. As a witness, Riley has no Rule 6(e) protection from discovery.

**B.      Rule 6(e) Does Not Apply to Most of the Plaintiffs' Requests**

---

[5]   *See, e.g.*, 1 CHARLES A. WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE – CRIMINAL § 106 (4th ed. 2008).

[6]   The court in *SEC v. Oakford Corp.*, 141 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) stated that although "a witness is free to voluntarily disclose his testimony before a grand jury, he may not be compelled to do so by another person." But the court's holding was in the context of the defendants' motion to compel a nonparty witness to testify about how the witness had testified to a grand jury in a related pending matter that involved the same underlying subject matter as the civil suit. *See also* FED. R. CRIM. P. 6(e)(5), (6) (imposing on courts the duty to hold closed hearings and keep "records, orders, and subpoenas relating to grand-jury proceedings" under seal "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury").

Even if the defendants could invoke a "grand-jury privilege" under Rule 6(e) – which they cannot – they would still be required to respond to most of the discovery requests because Rule 6(e) does not apply to most of the discovery the plaintiffs seek. The protections of Rule 6(e) are narrow. Rule 6(e) does not apply to materials generated independently of a grand-jury investigation relevant to the claims or defenses asserted in a civil case, even if those materials were also presented to the grand jury. Nor does Rule 6(e) prevent the disclosure of information or documents voluntarily supplied to the government or generated by the government in investigations preliminary or parallel to grand-jury proceedings. According to many courts, Rule 6(e) does not preclude discovery requests seeking "all documents produced to the grand jury." *See Graphics Processing*, 2007 WL 2127577, at *3; *Plastics Additives*, 2004 WL 2743591, at *12.

Most of the plaintiffs' discovery requests make no mention of government investigations or grand-jury proceedings against Alpert, instead seeking information and documents that would have been generated independently of such proceedings. One document request, for example, seeks "[a]ll documents relating to your employment by Alpert or any entities or businesses related to Alpert." (Docket Entry No. 215, Ex. 1, Doc. Req. No. 31). Another seeks "[a]ll documents reflecting advice you gave Alpert in connection with the formation of the CRUT and/or entities owned by the CRUT." (*Id.*, Ex. 1, Doc. Req. No. 35). An interrogatory asks Riley to "[i]dentify every person or entity you claim to have hired to provide services to any of the Alpert Trusts, specify the terms of their engagement, the goods or services they are to provide, and identify any payments to them from any of the Alpert Trusts." (*Id.*, Ex. 2, Interrog. No. 3). The defendants object, without citing any case law, that responding to these and dozens of similar requests that make no mention of the grand-jury

investigation or any related investigation by the IRS or the Department of Justice would somehow reveal information regarding a matter "occurring before the grand jury," in violation of Rule 6(e)(2).

"[W]hen testimony or data is sought for its own sake – for its intrinsic value in furtherance of a lawful investigation – rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been . . . examined by a grand jury." *DiLeo v. Comm'r of Int'l Rev.*, 959 F.2d 16, 19 (2d Cir. 1992) (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). If the documents sought in discovery were generated before a grand-jury investigation for a purpose independent from that investigation, they may properly be disclosed, even by parties otherwise subject to the secrecy requirements of Rule 6(e)(2). "The mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of Rule 6(e)." *United States v. OMT Supermarket, Inc.*, 995 F. Supp. 526, 532 (E.D. Pa. 1997) (quoting *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980)). The rule of grand-jury secrecy is not intended "to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *Interstate Dress*, 280 F.2d at 54. Rule 6(e) does not relieve the defendants of their obligation to produce information and documents sought in discovery for reasons independent of the grand-jury investigation, even if the information and documents may also have been subpoenaed in the course of that investigation.

At a February 14, 2005 hearing, at which the parties' present counsel were in attendance, an Assistant United States Attorney clarified that Rule 6(e) did not impose any secrecy obligations that would prevent the defendants from responding to such document requests:

> THE COURT:  And information that was provided to a grand jury but also kept for other purposes, would you or your office have any objection to that information being revealed despite the fact that it was at one time also disclosed to a grand jury?
>
> AUSA:  Let me answer it this way, Your Honor: Any documents provided pursuant to a grand jury subpoena are, once within the province of the grand jury, potentially grand jury material and subject to Rule 6(e).  Those documents in their state prior to being produced and copies retained by the person or persons who produced don't carry the same protection as those that are actually produced to the grand jury. . . .
>
> THE COURT:  But I gather what you're saying is that you would not view it as a problem if information was sought to be discovered had also been provided to the grand jury?
>
> AUSA:  That's correct, Your Honor.

(Docket Entry No. 207, Ex. K at 4–5).

When asked by the defendants' counsel for further clarification, the Assistant United States

Attorney stated:

> AUSA:  If the materials that you're seeking were also subject to grand jury subpoena, the mere fact that they were subject to grand jury subpoena does not then give them some type of overall protection from your discovery . . . .  If your overall discovery request happens to encompass documents that went to the grand jury, the party from whom you are attempting to get them cannot say, well, we gave those to the grand jury previously, hence, they continue to have this protection.

(*Id.*, Ex. K at 6).  The defendants' counsel acknowledged that he understood that such documents

were subject to production.  (*Id.*, Ex. K at 6–7).

In the present case, the plaintiffs have alleged that Riley approached the IRS and voluntarily

supplied information and documents against Alpert.  (Docket Entry No. 132, Exs. 1, 4, 10).  Rule

6(e) does not protect against production of these materials, even if they were later submitted to a

grand jury.  In *Davies v. Commissioner of Internal Revenue*, 68 F.3d 1129, 1130 (9th Cir. 1995), for example, the Ninth Circuit concluded that information supplied to the government in the course of an investigation, even if later presented to the grand jury, is not subject to Rule 6(e).  The *Davies* court held that there was no Rule 6(e) issue with the Tax Court's consideration in a civil enforcement action of information that the defendants' former attorney had voluntarily supplied to the IRS, despite the fact that some of the information supplied may also have been forwarded to a grand jury.  The Ninth Circuit concluded that the fact of grand-jury proceedings was "not relevant" under the circumstances, stating: "Rule 6(e) simply does not apply to information voluntarily provided by [the attorney] because a witness's 'knowledge and information' is not covered by the rule."  *Id.*  If Riley cooperated with an IRS investigation preliminary or parallel to the grand-jury investigation, information or documents produced in the course of such an investigation are also not protected from discovery by Rule 6(e), even if these materials were submitted to the grand jury.  *See In re Grand Jury Subpoena*, 920 F.2d 235, 240 (4th Cir. 1990); *In re Grand Jury (Catania)*, 682 F.2d 61, 63 (3d Cir. 1982); *In re Grand Jury Investigation*, 610 F.2d at 217.

## C.  The Probate Court Ruling Did Not Address These Issues

The defendants argue that the probate court in Cause No. 305,352-401, *In re: The Roman Merker Trust, Daniel James Alpert Trusts, and The Robert Alpert 1996 Children's Trust v. Robert Alpert*, ruled in 2004 that the defendants need not respond to such discovery requests, (Docket Entry No. 207, Ex. G), and that this court should treat that ruling as preclusive.  The probate court denied Robert Alpert's motion to compel production of a brief that Riley submitted to the probate court for *in camera* inspection.  Riley contended that the brief set forth his basis for refusing to respond to Alpert's discovery requests.  The probate court stated:

12

On this 13 day of January, 2004, came on to be heard Robert Alpert's Emergency Motion to Compel Production of [Riley's] Brief Filed in-Camera on December 11, 2003, and the Court having considered same, such Motion is hereby in all things DENIED.

(Docket Entry No. 207, Ex. G).   The court crossed out an addendum that would have added:  "[I]t is also found that the 'Riley Privilege [IRS]' documents are privileged."  (*Id.*).  The probate court's order says only that Alpert was not entitled to production of the brief that Riley filed and is silent as to the existence of any privilege under Rule 6(e).  Affirming the probate court's order, the Court of Appeals characterized the issue as whether Alpert could "compel discovery of a legal brief." (*Id.*). The probate court's ruling does not provide any basis for the defendants' refusal to respond to the discovery requests.

In sum, Rule 6(c) provides no basis to object to the plaintiffs' discovery requests.

### III.    26 U.S.C. § 6103

The defendants also cite an "Internal Revenue Service privilege relative to civil or criminal tax investigations" under 26 U.S.C. § 6103 as a basis for refusing to respond to virtually all of the plaintiffs' discovery requests.  Section 6103 is a lengthy statute, and the defendants do not specify which clauses of the statute support the privilege that they assert.  The defendants cite no cases that recognize or apply the privilege that they assert.

Section 6103(a) of the Internal Revenue Code provides that "[r]eturns and return information shall be confidential," and that federal, state, and local government officials and employees, and other categories of enumerated persons "shall [not] disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise."  26 U.S.C. § 6103(a).  None of the enumerated persons apply to this case.

The term "return information" includes, in relevant part:

13

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A). "Return information includes the taxpayer's identity, the fact that the taxpayer is under investigation or subject to further investigation, and data that the IRS has collected about a return." *Huckaby v. United States*, 794 F.2d 1041, 1046 (5th Cir. 1986). To be "return information," the information "must first be 'received by, recorded by, prepared by, furnished to, or collected by,' the IRS." *Baskin v. United States*, 135 F.3d 338, 342 (5th Cir. 1998) (quoting § 6103(b)(2)).

Section 6103 does not impose secrecy obligations on the defendants and does not give them a blanket privilege or protection against discovery. Section 6103 applies only to government officers and employees. Section 6103 cannot be used invoked to "block access, through pretrial discovery or otherwise, to copies of tax returns in the possession of litigants." *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993); *see also Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 194–95 (Fed. Cl. 2005) (concluding that § 6103 provided no basis for a private accounting firm to resist disclosing return information). "[A]lthough tax returns . . . are made confidential within the government bureau, copies in the hands of the taxpayer are subject to discovery." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218–19 (1961). "If [a plaintiff] gives his [tax] returns to a friend who passes out copies at work, or to an accountant who relates juicy tidbits at a cocktail party, [the plaintiff] may think himself ill used and may have remedies

14

under state law, but neither the friends nor the accountant violated § 6103." *Hrubec v. Nat'l R.R. Passenger Corp.*, 49 F.3d 1269, 1270 (7th Cir. 1995). Section 6103 "does not evince a Congressional intent to prohibit the production of tax returns in the hands of non-governmental third parties pursuant to a subpoena in civil litigation." *Jade Trading*, 65 Fed. Cl. at 194 (citing *Stokwitz v. United States*, 831 F.2d 893, 896 (9th Cir. 1987)).[7]

The "Internal Revenue Service privilege relative to civil or criminal tax investigations" asserted by the defendants does not excuse them from responding to the plaintiffs' discovery requests.

## IV.    The Informant-Identity Privilege

The defendants also invoke an "informant identity privilege" as a basis for refusing to respond to virtually all of the plaintiffs' discovery requests. This claim fails because Riley's identity as an informant is already known. Hux stated in his affidavit that Riley disclosed that he was serving as a confidential informant against Alpert for the IRS and showed him the draft CIRA. "Once the identity of the informer has been disclosed 'to those who would have cause to resent the communications' no further reason remains for applying the privilege." 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 510.06[1] (2d ed. 2005) (quoting *Rosario v. United States*, 353 U.S. 53, 60 (1957)). "The waiver can occur directly, by the informer disclosing his or her identity, or indirectly, through taking some action which reveals his or her interest in the subject matter." *Id.* "Disclosure may be made by the informer or by the government."

---

[7]   The defendants do not argue that they are government agents for § 6103 purposes, but in any event, such argument would fail. *See Moncrief v. Moncrief*, No. 4:98-cv-528, 1998 WL 567988, at *8 (N.D. Tex. Aug. 3, 1998) (A tax informant is not considered an agent of the United States government.).

15

*Id.* In this case, Riley disclosed his identity as an informant to Hux (who in turn informed the plaintiffs).

The defendants have cited no authority – and this court has located none – to suggest that an informant's privilege extends beyond the fact of his identity. The cases show that after an informant's identity has been disclosed, information relating to the scope and terms of the informant's role is discoverable if the party seeking disclosure raises credible allegations of malfeasance by the identified informant. *See Higaldo v. Federal Bureau of Investigation*, 541 F. Supp. 2d 250, 252–53 (D.D.C. 2008) (the court ordered the FBI to produce records reflecting the government's payments to an informant whose identity the plaintiff had discovered); *Bennett v. Drug Enforcement Administration*, 55 F. Supp. 2d 36, 42 (D.D.C. 1999) (the court ordered the Drug Enforcement Administration to produce payment records and details of a known informant's criminal history to the plaintiff, who alleged that the government had made extensive payments to the informer and had permitted the informer to perjure himself).

As in *Higaldo* and *Bennett*, the plaintiffs seek disclosure of the scope and terms of Riley's role as a confidential informant for the IRS, to prove malfeasance by Riley and by Meynier, his assistant. Riley's status as an informant is not secret. The "informant's privilege" does not excuse the defendants from producing the discovery that the plaintiffs seek.[8]

## V.     Attorney-Client Privilege and Work-Product Protection

---

[8]   The record also confirms that there are no Rule 6(e) issues associated with the disclosure of the scope and terms of Riley's role as a confidential informant. An Assistant United States Attorney testified before this court that no confidentiality agreement with the IRS or "any type of agreement between anybody" was ever present in the grand-jury investigation file, and no such agreement was ever produced under the grand-jury subpoena. (Docket Entry No. 207, Ex. M at 5). Disclosing the terms and scope of Riley's role as a confidential informant will not constitute disclosure of matters "occurring before the grand jury."

16

The defendants also assert attorney-client privilege under federal common law and Texas Rule of Evidence 503 and work-product protection under Federal Rule of Civil Procedure 26(b)(3) and Texas Rule of Civil Procedure 192.5.  The defendants have not provided a privilege log.

### A.      The Legal Standards

Federal Rule of Evidence 501 governs a claim of attorney-client privilege in federal court. Under Rule 501, the federal common law of privilege generally applies to cases in federal court. But the rule also states that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." FED. R. EVID. 501.  Federal privilege law governs in a federal question case involving only federal law and state privilege law applies in a diversity case involving only state law.  *See Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785, 791 (5th Cir. 1993) (applying federal privilege law in federal-question case); *In re Avantel, S.A.*, 343 F.3d 311, 318 n.6 (5th Cir. 2003) (applying Texas attorney-client privilege law in diversity case).  When state-law claims are present in a federal-question case under the federal court's supplemental jurisdiction, however, "it is not immediately clear what law should apply." *Garza v. Scott and White Mem'l Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005).  Neither the Supreme Court nor the Fifth Circuit has resolved this issue.  The Supreme Court recognized the problem but declined to decide the appropriate rule.  *See Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) (declining to decide "the proper rule in cases . . . in which both federal and state claims are asserted in federal court").  The defendants argue that both federal and Texas law regarding attorney-client privilege and work-product protection operate to prevent the disclosure of the materials that the plaintiffs seek to discover.

17

Under federal common law, a party asserting attorney-client privilege must establish "(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).   Texas Rule of Evidence 503 is similar.   Under both federal common law and Rule 503, the client, not the client's attorney, is the holder of the privilege.   *See In re Grand Jury Subpoenas*, --- F.3d ---, 2009 WL 456412, at *3 (5th Cir. 2009); TEX. R. EVID. 503(b)(1).   Neither the federal common law rule nor Rule 503 apply if the client alleges that the attorney breached a fiduciary duty to the client.   *Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992); TEX. R. EVID. 503(d)(3) ("There is no privilege under this rule . . . [a]s to a communication relevant to an issue of breach of duty by a lawyer to the client . . . .").

When the client in an attorney-client relationship is the trustee of a trust, communications between the trustee and the attorney are generally privileged.   Trustees, however, may not rely on the attorney-client privilege to block inquiry by their own beneficiaries into the proper management of the assets entrusted to them.   *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) ("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator."); *United States v. Doe*, 162 F.3d 554, 556–57 (9th Cir. 1998) (When an attorney advises a trustee regarding the management of an ERISA plan, "the ultimate clients of the attorney are as much the beneficiaries of the plan as the trustees.").   The court in *Riggs v. National Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976), the first to recognize a fiduciary exception to a trustee's claims of attorney-client privilege, explained:

18

> As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client . . . .  And, the beneficiaries are not simply incidental beneficiaries who chance to gain from the professional services rendered.  The very intention of the communication is to aid the beneficiaries.  The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.  The policy of preserving the full disclosure necessary in the trustee-beneficiary relationship is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust.

*Id.* at 713–14.

Under both the federal and state rules, "a pre-existing document does not become privileged by its transfer to the attorney.  If production of the document or object could have been compelled by court process while it was in the hands of the client, the document or object must be produced even through it is now in the hands of the attorney."  3 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 503.14[6][a]; *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[P]re-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); *In re Allen*, 106 F.3d 582, 606 (4th Cir. 1997) (documents collected by attorney that pre-dated the attorney's engagement were not protected by attorney-client privilege); *Robinson*, 121 F.3d at 975 (same).  "There is no specific privilege under our rules or caselaw for 'documents in an attorney's files.'  Thus, a party may not cloak a document with the attorney-client privilege simply by forwarding it to his or her attorney." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993).

Federal Rule of Civil Procedure 26(b)(3) protects against the disclosure of work product, which is defined as "documents and tangible things that are prepared in anticipation of litigation or

for trial" that would otherwise disclose "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation."   A party resisting discovery based on work-product protection has the burden of establishing that 1) the materials at issue are documents or tangible things; 2) prepared in anticipation of litigation or for trial; 3) by or for a party's representative; 4) that contains the mental impressions, conclusions, opinions, or legal theories of an attorney.  *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003) (citing 8 CHARLES A. WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 2024, at 336 (2d ed. 1994)).  Texas Rule of Civil Procedure 192.5 sets forth a similar rule, encompassing materials or communications "prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employers, or agents."  TEX. R. CIV. P. 192.5(a).  Under federal and Texas law, work-product protection belongs to both the client and the attorney, either of whom may assert it.  *See In re Grand Jury Subpoenas*, --- F.3d ---, 2009 WL 456412, at *3 (5th Cir. 2009).

Under both the federal and state rules, the voluntary disclosure of privileged materials to government investigators generally waives both attorney-client privilege and work-product protection.  *See Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (documents sent to a law firm for legal advice were not protected on privilege grounds once the client voluntarily authorized the law firm to send those documents to the SEC); *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684–87 (1st Cir. 1997) (a government contractor's disclosure of documents to the Defense Department's audit agency waived attorney-client privilege with respect to those documents; privilege was not a defense to an IRS summons regarding those documents).

20

A party asserting a privilege bears the burden of demonstrating its applicability.  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).  A privilege claimant's burden "extends to proof of preliminary facts showing that the matter is eligible for protection."  *Id.* at 710 n.7.  Federal Rule of Civil Procedure 26(b)(5) provides that a party claiming a privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5).  Compliance with Rule 26(b)(5) is "usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter. . . ."  *Santa Fe*, 272 F.3d at 710 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995)).

### B.    Analysis

Many of the plaintiffs' discovery requests seek information and documents generated during the course of Riley's legal representation of Alpert.  To the extent that the information or documents generated or received during this representation reflect confidential communications made for the purpose of obtaining legal advice – although the defendants do not specifically identify any such information or documents – the attorney-client privilege would be held by the client, Robert Alpert.  As the holder of the privilege, Alpert may waive it.  Riley, the attorney, does not possess an independent privilege in these materials and "may not invoke [the privilege] against the client's or ex-client's wishes."  3 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 503.20[3].  To the extent that any of the documents generated during this representation are work product – which would require that they were prepared in anticipation of litigation and contain Riley's mental

21

impressions – Riley could not assert that protection against his client, Alpert.  Riley cannot invoke attorney-client privilege or work-product protection to prevent disclosure of documents and information generated or received in his work as Alpert's attorney.

Similarly, many of the plaintiffs' discovery requests seek information and documents from Riley's work as the trustee or putative trustee of the Alpert trusts.  Roman Alpert's First Set of Interrogatories and Document Requests to Mark A. Riley, for example, focuses almost entirely on Riley's involvement with the Alpert Trusts.  (Docket Entry No. 215, Ex. 2).  Riley cannot claim privilege against the trust beneficiaries, plaintiffs Roman and Mark Alpert, with respect to any legal advice that he sought in his role as trustee on behalf of the trust, as the Alperts were the true "clients" in any attorney-client relationship that Riley may have entered on behalf of the trust.  *See Wildbur*, 974 F.2d at 645; *Doe*, 162 F.3d at 556–57; *Riggs,* 355 A.2d at 713–14.  Similarly, any work product prepared on the trusts' behalf would not be protected from discovery by the beneficiaries, who are "entitled to know what the trustees did, that is, what legal opinion was sought on their behalf and what was done in light of that opinion on their behalf."  *Riggs*, 355 A.2d at 716.

The defendants have indicated that Riley gave information and documents he generated in his capacity as Alpert's attorney or as the trustee of the trusts to his own attorneys, Scardino and Courtney.  Such a transfer would not provide a basis for Riley to claim attorney-client privilege or work product protection on these materials.  "[A] party may not cloak a document with the attorney-client privilege simply by forwarding it to his or her attorney."  *Nat'l Union Fire v. Valdez*, 863 S.W.2d at 460; *see also Allen*, 106 F.3d at 606; *Robinson*, 121 F.3d at 975.  This is all the more true in light of the allegations that, at Riley's request, Scardino and Courtney forwarded documents to the government for its investigation against Alpert, further waiving any privilege or protection.  *See*

*Ratliff*, 354 F.3d at 170; *Mass. Inst. of Tech.*, 129 F.3d at 684–87.   Documents and information exchanged between Scardino or Courtney and Riley after his involvement with the Alperts ended, such as the final version of the CIRA signed by the IRS and Scardino and Courtney, would not be subject to privilege or protection to the extent these materials were voluntarily produced to the government.

Some of the plaintiffs' discovery requests seek materials that Riley may have generated or received with the involvement of his attorneys, Scardino and Courtney, which were not subsequently disclosed to the government.  The plaintiffs, for example, seek "[a]ll drafts of all agreements with the IRS concerning information to be provided about transactions involving Alpert or any entities or businesses related to Alpert, whether intended to be signed by you or an agent on your behalf," and "[a]ll communications with Scardino, Courtney, or Scardino & Courtney concerning Riley, the Alpert Trusts, Alpert or any entities or businesses related to Alpert."  (Docket Entry No. 215, Ex. 1, Doc. Req. No. 4; Ex. 3, Doc. Req. No. 15).   To the extent that drafts, documents, or communications between Riley and his attorneys were not shared with the government, and reflect confidential communications between Riley and his attorneys or the mental impressions of Riley's attorneys, these documents may be subject to privilege or work-product protection claims.  By **May 15 2009**, the defendants must submit a privilege log that identifies the particular documents or other communications they seek to withhold by date and by the names of the authors and recipients, and that describes the general subject matter of these documents.  *See* FED. R. CIV. P. 26(b)(5) (A party withholding documents on privilege grounds must "describe the nature of the documents . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

23

The plaintiffs also seek discovery of the circumstances surrounding Riley's attorney-client relationship with Scardino and Courtney, including "by whom and when [Riley was] referred to Scardino & Courtney," and "[a]ll documents evidencing payments made, in any capacity, to attorneys for work done or expenses incurred with regard to matters relating to Alpert or any entities or businesses related to Alpert." (Docket Entry No. 215, Ex. 1, Interrog. No. 4 and Doc. Req. No. 11). As a general rule, this type of information is not privileged. *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991) ("[C]lient identity and fee arrangements are not protected as privileged."). Texas law is similar. *See Weslaco Holding Co., L.L.C. v. Crain, Caton & James, P.C.*, No. 07-0317, 2007 WL 1746822, at *1 (S.D. Tex. June 15, 2007). Such materials are generally "a byproduct of the fact of the representation and are not protected by any of the asserted privileges" or the work product doctrine." *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, No. 05-1182, 2007 WL 1792352, at *3 (E.D. La. June 20, 2007). A party seeking to avoid disclosure of such materials has the burden of proving an exception, such as billing records that reveal particular areas of research or litigation strategy, or materials that reveal the client's confidential motive for consulting an attorney. *See Reyes-Requena*, 926 F.2d at 1430–31. In this case, the plaintiffs seek only "invoices," not detailed billing records, and Riley's reason for approaching Scardino and Courtney – to represent him for his role as a confidential informant to the IRS – is known. If the defendants contend that particular items sought fall within one of the exceptions, they must identify the particular materials that they are withholding on privilege grounds and provide a description in a privilege log, by **May 15, 2009**. *See In re Santa Fe Int'l Corp.*, 272 F.3d at 710.

24

In sum, attorney-client privilege and work-product protection do not provide a basis for the defendants' blanket objections to production of materials generated during Riley's representation of Alpert, materials generated during Riley's role as trustee of the Alpert Trusts, materials produced to the government, and the circumstances surrounding Riley's relationship with Scardino and Courtney and the fees that Riley has paid them.

## VI.     Documents Subject to Confidential Settlement Agreements

The plaintiffs' discovery requests also seek any confidentiality orders or protective agreements that the defendants assert would impact their response to the requests for production. The defendants have refused to produce these documents because they are "subject to a Settlement Agreement, Protective Order, and turnover agreement in Cause No. 2001, 495,24, *Hospital Solutions, L.L.C. and Mark R. Riley v. Robert C. Hux et al.* Consolidated with Cause No. 2001-52108, *Robert C. Hux and Hospital Systems Solutions, L.L.C. v. Mark Riley*." (Docket Entry No. 215, Ex. 1, Doc. Req. Nos. 26, 27). The defendants must produce these documents and the settlement agreement, protection order, or turnover agreement that allegedly prevents disclosure, for *in camera* inspection by this court, no later than **May 15, 2009**.

## VII.    Conclusion

The secrecy obligations and privileges asserted by the defendants largely do not apply. Rule 6(e) does not excuse the defendants from responding to the plaintiffs' discovery requests. None of the other asserted privileges provide a blanket excuse for the defendants' refusal to respond to the plaintiffs' discovery requests. To the extent that the defendants contend that specific documents

may be withheld on grounds of attorney-client privilege or work-product protection, they must

provide a detailed privilege log and produce this log to the plaintiffs no later than May 15, 2009.

      SIGNED on April 30, 2009, at Houston, Texas.

              Lee H. Rosenthal
            United States District Judge

26