**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT ALPERT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3774 |
| | § | |
| MARK R. RILEY, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This opinion addresses the following motions:

(1)     the plaintiffs' motion for partial summary judgment on issues related to the Robert Alpert Trust (RAT), Daniel Alpert Trust (DAT), and Robert Alpert 1996 Children's Trust (the "Children's Trust") (collectively, the "Three Trusts"), (Docket Entry No. 366); and

(2)     the defendants' motion to dismiss for lack of subject-matter jurisdiction, (Docket Entry No. 440).

Based on the motion and response, (Docket Entry No. 408); the record, and the applicable law, Alpert's motion for partial summary is granted in part and denied in part. It is granted as to the plaintiffs' claim that after June 8, 2005,  Riley lacked authority to withdraw funds from the Three Trusts as compensation or to pay for litigation expenses incurred prosecuting claims against Alpert on after April 21, 2006.  The motion is also granted as  to the plaintiffs' claim that Riley did not properly reappoint himself trustee of the Three Trusts on January 10, 2010.  The motion is denied as to the plaintiffs' claims that Riley lacked authority to act as trustee of the DAT and RAT after June 8, 2005.  This claim was remanded to the state probate court.  The motion is also denied as to the plaintiffs' claim that Riley breached fiduciary duties to the Three Trusts after June 8, 2005. That claim will be tried in this case.  The reasons for these rulings are set out in detail below.

## I.       Facts

This case arises out of disputes between Robert Alpert and Mark Riley that have played out for more than a decade Texas state courts and this court.  Riley is a lawyer and an accountant.  Riley worked for Alpert and entities that he owned or controlled from June 1994 to October 1998.  Riley served as trustee for trusts Alpert established primarily for his sons, Roman Alpert and Daniel Alpert.  Alpert and his sons sued Riley and his former legal assistant, Dixie G. Meynier, in this court, based on actions relating to Alpert's finances and businesses, four trusts Alpert created, and Riley's involvement in providing confidential information about Alpert to the IRS for compensation.

The parties have been litigating, and continue to litigate, claims related to the Three Trusts in state probate court.  Their litigation began in 1998 in Probate Court Number Two of Harris, County Texas, in *In re: Roman Alpert Trust, Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust; Mark Riley, Trustee vs. Robert Alpert, et al.*  After a number of rulings and a jury trial, the probate court entered a final judgment on June 8, 2005.  Alpert appealed.  The First Court of Appeals reversed and rendered on a number of issues and reversed and remanded on other issues. *Alpert v. Riley*, 274 S.W.3d 277 (Tex. App. — Houston [1st Dist.] 2008, pet. ref'd).  The Texas Supreme Court declined to review the case.

Alpert's claims related to the Three Trusts in this court are limited to acts after June 8, 2005, the date the probate court issued its final judgment.  In their third amended complaint in this court, the plaintiffs asserted claims against Riley for negligence and gross negligence, negligent misrepresentation, breaches of fiduciary duties and aiding abetting breaches of fiduciary duties, civil conspiracy, and violations of §§ 6103 and 7431 of the Internal Revenue Code (and a declaration that

these sections were violated).[1]

Litigation between the parties began in 1998, when Riley, claiming to be the trustee of the RAT and DAT, filed suit in the state probate court against Alpert based on allegations that he had sold stocks to trigger a tax loss and then caused the RAT and DAT to buy those stocks, allegedly resulting in the overpayment of taxes by the trusts.   Riley alleged that Alpert breached fiduciary duties he owed to the trust beneficiaries.

The beneficiaries intervened in the suit and sought a declaration that Riley was not the trustee of the RAT or DAT, or alternatively, an order removing Riley as trustee because of his breaches of fiduciary duties.   After Riley allegedly intercepted a tax-refund check issued to the Children's Trust, the putative trustee of that trust initiated a separate suit, seeking a declaratory judgment that Riley was not the trustee.   The probate court consolidated that suit with the previously filed suit involving the RAT and DAT.

Cross-motions for summary judgment were filed on whether Riley was the properly appointed trustee of the Three Trusts.   The probate court granted Riley's motion as to the RAT and DAT and found that he was properly appointed as the trustee.   The probate court initially denied Riley's motion as to the Children's Trust but ruled at a pretrial hearing that Riley was the properly appointed trustee of that trust as well.   The probate court also granted Riley's motion for summary judgment on Alpert's liability for breaches of fiduciary duties and the amount of damages suffered by the Three Trusts.   The probate court found that Alpert's actions caused $2,000,000 in tax losses to the trusts.   Following a jury trial, on June 8, 2005 the jury found that Riley breached his fiduciary

---

[1]  The plaintiffs also sought a declaratory judgment that Riley was prohibited from acting as trustee of another trust, the Alpert Family Charitable Remainder Unitrust (the "CRUT").   The plaintiffs claims related to the CRUT are not at issue in this motion.

duties to the trust but awarded no damages.  The jury also found that Alpert had breached fiduciary duties with respect to additional transactions but awarded no damages.  The jury awarded Riley's attorneys $1,517,348 in fees for their work on behalf of the RAT and DAT and $57,038 for their work on behalf of the Children's Trust.

On March 28, 2006, following a post-trial hearing, the probate court entered judgment on the jury's findings against Alpert, effective as of the date of the verdict.  The probate court awarded $1,234,445.50 to Riley for each of the RAT and DAT trusts; attorney's fees of $656,200.78; prejudgment interest; and additional attorney's fees of $208,688.03 for each trust and for appellate fees in connection with the summary judgment findings against Alpert on the stock transactions. The probate court disregarded the jury's breach finding against Riley and its award of attorney's fees to the beneficiaries.  The final judgment also terminated Riley's trusteeship for all three trusts, but then reappointed Riley to serve as trustee of the Three Trusts pending the appeal.  After the probate court's final judgment, Alpert and the beneficiaries asked to post security to suspend Riley's reappointment as trustee pending appeal, which the probate court denied.

Alpert appealed.  On July 3, 2006, the appellate court stayed the probate judgment.  That stay remained in effect throughout the appeal and was reaffirmed by the appellate court on June 29, 2007, and again on February 1, 2008.

On October 9, 2008, the appellate court reversed the probate court's judgment.  The appellate court:

- reversed the probate court's ruling that Riley was properly appointed trustee of the RAT and DAT and remanded the issue to the probate court;

- reversed the probate court's ruling that Riley was properly appointed trustee of the Children's Trust and rendered judgment that Riley was not, as a matter of law, properly appointed trustee of that trust;

4

- • reversed the probate court's judgment that Alpert breached fiduciary duties to the trusts and dismissed the claims for lack of subject-matter jurisdiction;

- • reversed the probate court's judgment disregarding the jury's finding that Riley breached fiduciary duties, and rendered based on the jury's verdict;

- • reversed the probate court's judgment setting aside the attorney's fees the jury awarded the beneficiaries and remanded for further proceedings;

- • reversed the probate court's award of attorneys' fees to Riley and remanded for further proceedings as to whether Riley was ever properly appointed trustee of the RAT and DAT;

- • reversed the probate court's judgment approving trustee compensation for Riley and rendered judgment that Riley could recover no compensation for any acts as trustee;

- • affirmed the probate court's recognition that Riley was released as trustee of any trusteeship that may later be found to be valid but reversed the appointment of Riley as successor trustee and rendered judgment "that any successor trustees for the RAT, DAT, and [Children's] trust are to be selected in accordance with the terms of the applicable trust instrument, after identification of the valid trustee for each trust"; and

- • affirmed the probate court's denial of Alpert's request that he be permitted to post security to suspend Riley's reappointment as trustee pending appeal.

The appellate court also rendered judgment that Riley was not entitled to reimbursement for any attorneys' fees or expenses incurred after April 21, 2006 in connection with his prosecution of claims against Alpert. The court made this ruling based on § 113.028 of the Texas Property Code, which provides:

> A trustee may not prosecute or assert a claim for damages in a cause of action against a party who is not a beneficiary of trust if each beneficiary of the trust provides written notice to the trustee of the beneficiary's opposition to the trustee's prosecuting or asserting the claim in the cause of action.

The beneficiaries had provided notice of their opposition to Riley's lawsuit on April 21, 2006, after

§ 113.028's June 17, 2005 effective date.[2]

Based on the appellate court's rulings, the plaintiffs have moved for summary judgment on the following:

1.   No matter what the outcome of the issues remanded to probate court, Riley has never had authority to act for the [Children's] Trust and any benefits received from actions taken claiming such authority should be restored to the [] Trust, together with interest from the date of each unauthorized transaction.

2.   No matter what the outcome of the issues remanded to probate court, Riley had no authority after June 8, 2005 to act for the [RAT] and any benefits received from actions taken claiming such authority should be restored to the RAT, together with interest from the date of each unauthorized transaction.

3.   No matter what the outcome of the issues remanded to probate court, Riley had no authority after June 8, 2005 to act for the [DAT] and any benefits received from actions taken claiming such authority should be restored to the DAT, together with interest from the date of each unauthorized transaction.

4.   All amounts in excess of $208,688.03 paid from the RAT to Crain, Caton & James after June 8, 2005, and all other amounts paid from the RAT after June 8, 2005 were unauthorized, no matter what the outcome of the issues remanded to probate court might be, and should be restored, together with interest from the date of each transaction.

5.   All amounts in excess of $208,688.03 paid from the DAT to Crain, Caton & James after June 8, 2005, and all other amounts paid from the DAT after June 8, 2005 were unauthorized, no matter what the outcome of the issues remanded to probate court might be, and should be restored, together with interest from the date of each transaction.

6.   No matter what the outcome of the issues remanded to probate court, all actions taken by Riley after April 21, 2006 to pursue judgment entered against [Alpert] on March 28, 2006, which has now been reversed and rendered, were in violation of TEX. PROP. CODE § 113.028, were unauthorized payments, and should be restored, together with interest from the date of each unauthorized transaction.

---

[2]  The beneficiaries had also sent notice before § 113.028's effective date.  The appellate court did not consider this notice because it occurred, under state law, "when Riley retained discretion to continue the prosecution" without the beneficiaries' consent.  *Alpert*, 274 S.W.3d at 295.

7.     Even if the transactions Riley undertook after June 8, 2005, while claiming to be trustee of the RAT and DAT, were not otherwise unauthorized, they were breaches of fiduciary duties and were prohibited by the trust instruments and Texas law.

8.     Riley's reappointment of himself as trustee of any of the Alpert trusts on January 10, 2010 is of no force or effect, regardless of the outcome of the remand to probate court,          because it is not authorized by the trust instruments or Texas law.

The defendants responded, (Docket Entry No. 408).

The defendants have also moved to dismiss for lack of subject-matter jurisdiction. (Docket Entry No. 440). The defendants argue that the plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the probate exception to federal subject-matter jurisdiction. Alternatively, the defendants argue that this court should abstain from exercising jurisdiction under the Supreme Court's decisions in *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); or *Younger v. Harris*, 401 U.S. 37 (1971).

## II.     Analysis

### A.     The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party

moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265

8

F. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 780 F.2d at 1194).

But "'[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (quoting

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348

(1986)).

### B.     Issues 1–6

The plaintiffs' first five grounds for summary judgment all turn on whether Riley was legally

authorized to act as trustee for the Three Trusts.  The plaintiffs argue that because the appellate court

reversed the probate court's appointment of Riley as successor trustee of the trusts after releasing

him as trustee, it also determined that Riley acted without authority as trustee after June 8, 2005.

In their sixth issue for summary judgment, the plaintiffs argue that they are entitled to partial

summary judgment that "all actions taken by Riley after April 21, 2006 to pursue judgment entered

against [Alpert] on March 28, 2006, which has now been reversed and rendered, were in violation

of TEX. PROP. CODE § 113.028, were unauthorized payments, and should be restored, together with

interest from the date of each unauthorized transaction."

The defendants respond that Riley acted pursuant to the probate court's appointment of him

as successor trustee, and that he was authorized to act as trustee until the appellate court reversed

his appointment on October 9, 2008.  The defendants also argue that the appellate court did not

disturb the probate court's ruling that Riley acted as "trustee in fact" of the Three Trusts.  The

defendants emphasize that both the probate court and the appellate court refused Alpert's request

9

to post a security bond in lieu of Riley acting as trustee of any of the Three Trusts.

As to Riley's authority, the appellate court: (1) reversed the probate court's judgment that he was properly appointed trustee of the RAT and DAT and remanded to the probate court for further proceedings; and (2) reversed the probate court's judgment that he was properly appointed trustee of the Children's Trust and rendered judgment that he was improperly appointed. As to the identification of the proper trustee, the appellate court: (1) upheld the probate court's release of Riley "from any trusteeship that may later be found to be valid"; (2) reversed the probate court's appointment of Riley as successor trustee to the Three Trusts; and (3) instructed the probate court to determine the proper successor trustee of the Three Trusts according to the trust instruments. *Alpert*, 274 S.W.3d at 298–99. The appellate court's rulings do not address whether Riley had or had not acted with proper authority as the trustee of the RAT or DAT after June 8, 2005, and they do not provide a basis to find that Alpert acted without any authority after June 8, 2005.

The plaintiffs emphasize that the appellate court reversed the probate court's appointment of Riley as successor trustee to the Three Trusts. Until the reversal, however, Riley was acting as trustee under an appointment by the probate court. The appellate court recognized that Riley acted as "trustee in fact" even before the probate court litigation began. The appellate court affirmed the probate court's denial of a bond to prevent Riley from acting as the Three Trusts' trustee pending the appeal.[3] A trustee in fact, or de facto trustee, "could describe anyone who is not a trustee in fact

---

[3] The probate court first denied the plaintiffs' request to "post security to suspend Riley's appointment as trustee pending appeal." 274 S.W.3d at 298. The appellate court upheld the probate court's decision for two reasons. First, the court determined that the probate court's denial was not properly raised on appeal because the denial of a security bond is not a final judgment under Texas law. *Id.* at 297 (citing *Lehmann v. HarCon Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)). Second, the appellate court considered "the substance of appellants' request for relief as a motion ancillary to their appeal on the merits." *Id.* The court reasoned that while Texas Rule of Appellate Procedure 24.2(a)(3) requires a trial court to set a security amount during an appeal "[w]hen the judgment is for something other than money or an interest

but is potentially liable as a trustee . . . . [T]he phrase usually refers to a person who has at least a colorable claim to be trustee, acts as one, and, in some instances who seeks the benefits of one." *Allen Trust Co. v. Cowlitz Bank*, 152 P.3d 974, 977 n.2 (Or. Ct. App. 2007).  The appellate court's refusal to alter the status quo in which Riley had acted as trustee in fact shows that the appellate court's opinion did not address Riley's authority to act after June 8, 2005.

Though the appellate court's decision does not provide a basis to find whether or not Riley acted without any authority after June 8, 2005, it does provide a basis to conclude that certain actions by Riley after June 8, 2005 were unauthorized.  Any funds Riley withdrew as compensation from any of the Three Trusts were unauthorized.  The appellate court held that under the terms of the RAT and DAT, Riley was not entitled, as a matter of law, to receive compensation.  *Alpert*, 274 S.W.3d at 296.  The court also found that because Riley was not the authorized trustee of the Children's Trust, he was not entitled to receive compensation as its trustee.  *Id.*  Any funds Riley withdrew to pay for litigation expenses accruing after April 21, 2006 to prosecute the claims against Alpert were also unauthorized.  The appellate court stated clearly that "[a]ny attorney's fees or legal expenses incurred in prosecuting the damages claims against Alpert after the beneficiaries' written notice of opposition [on April 21, 2006] are not authorized by the Trust Code, and are not reasonable or necessary as a matter of law."  *Id.*  To the extent Riley withdrew funds after June 8, 2005 to compensate himself or to pay for litigation expenses incurred after April 21, 2006 to prosecute claims against Alpert, those acts were unauthorized.

---

in property," the purpose of Rule 24.2(a)(3) is to "'preserve[] the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken."  *Id.* (quoting *In re Tarrant Cnty.*, 16 S.W.3d 914, 918 (Tex. App.—Fort Worth 2000, orig. proceeding)).  The court concluded that because "Riley [had] acted as trustee in fact since before the inception of the lawsuit," allowing the plaintiffs to post security would alter the status quo, in violation of Rule 24.2(a)(3).

The plaintiffs' first six grounds for summary judgment are granted to the extent they ask this court to find that, after June 8, 2005, Riley was unauthorized to withdraw any funds from the Three Trusts as compensation or to pay for litigation expenses to prosecute claims against Alpert incurred after April 21, 2006. They are denied to the extent they ask this court to find that Riley lacked any authority to act as trustee after June 8, 2005.

### B.     Issue 7

The plaintiffs also moved for summary judgment on their claim that as trustee, Riley breached fiduciary duties owed to the Three Trusts. In their motion, the plaintiffs list a number of transactions Riley made with respect to the Three Trusts. These transactions are loans from the RAT and DAT to the Children's Trust, which the plaintiffs allege violate § 113.052 of the Texas Property Code; withdrawals from the trusts made by Riley, which the plaintiffs assert are compensation; payments made to lawyers and law firms; and payments made to entities that the plaintiffs assert are controlled by Riley. (Docket Entry No. 366, at 11–17). The plaintiffs argue that because these all appear to be self-dealing, they are presumed unfair. The plaintiffs argue that because Riley has not produced any evidence that the transactions "either benefitted the trusts or were appropriate — much less fair," summary judgment on breach of fiduciary duty is appropriate.

The defendants respond that an affidavit by Riley creates fact issues as to breach of fiduciary duty. The affidavit stated in part:

> I have reviewed the transactions listed in the attachments to and made the basis of Plaintiffs' MPSJ. These transactions reflect expenditures for payment of attorney's fees and expenses, rent for office space housing and storage of the trusts' records, reimbursement to me for litigation expenses incurred and investments made and owned by the trusts. I did not receive any gain, benefit or profit from or as a result of any of these transactions or expenditures. These expenditures were fair and equitable to the trusts and made reasonable use of the

12

> trust assets.  The expenses paid were fair, reasonable and customary
> and necessary to proper administration of the trust assets.  All of the
> trust investments, expenditures and other transactions complied with
> the trust indentures, the Texas Trust Code and/or court orders.

(Docket Entry No. 408, Ex. 18, Riley Affidavit 11/16/10).

§ 113.052 of the Texas Property Code bars a trustee from lending trust funds to the trustee or an affiliate of the trustee; a director, officer, or employee of the trustee or an affiliate of the trustee; a relative of the trustee; or the trustee's employer, employee, partner, or other business associate.  The loans, however, were between the trusts.  Section 113.052 does not bar loans to trusts.  This does not provide a basis to grant summary judgment.

As to the remaining transactions, the plaintiffs are not entitled to summary judgment on the basis of the current record.  The plaintiffs merely list numerous transactions; assert that these transactions "appear to be self-dealing transactions"; and argue that Riley's failure to explain each transaction entitles them to summary judgment.  (Docket Entry No. 366, at 12).  While the plaintiffs are correct that "Texas courts apply a presumption of unfairness in a transaction involving self-dealing by a fiduciary," *Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex. App. — Houston [14th Dist.] 1993, writ denied), Riley's affidavit creates a fact issue as to whether these transactions were as self-dealing as they appear.  The plaintiffs have not offered any additional evidence to refute Riley's sworn statements that the transactions were  not for his benefit and complied with the trust indentures.  On this record, the plaintiffs' motion for partial summary judgment that Riley violated his fiduciary duties is denied.[4]

---

[4]  The defendants also argued that an additional plaintiff, Linda Stanley, lacks standing to assert claims against the defendants.  The defendant did not move to dismiss her, and whether she has standing or not is immaterial to this court's opinion.

C.      **Issue 8**

In their eighth issue for summary judgment, the plaintiffs ask this court to find that Riley's reappointment of himself as trustee of any of the Three Trusts on January 10, 2010 is of no force or effect.  This motion is granted.  The appellate court upheld the probate court's release of Riley's trusteeship as pertains to any trusteeship that may be later found to be valid and instructed the probate court to appoint each trust's successor trustee in accordance with the trust indentures.  To the extent Riley appointed himself trustee of any of the Three Trusts, that appointment is not valid as a matter of law.

III.    **Subject-Matter Jurisdiction**

A.      ***Rooker–Feldman***

Riley argues that the plaintiffs are seeking to overturn the probate court's judgment that Riley was "properly appointed as trustee of the RAT, DAT, and [Children's Trust] and appointed Riley to serve as trustee of the RAT, DAT, and [Children's Trust] until issuance of the final mandate."  (Docket Entry No. 408, at 11).  He argues that this violates the *Rooker–Feldman* doctrine.

*Rooker–Feldman* prevents state-court litigants "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994).  The rule derives from 28 U.S.C. § 1330, which limits district-court jurisdiction to cases in which federal courts have original jurisdiction, and § 1257, which gives the Supreme Court jurisdiction to hear appeals from a state's highest court.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 290–91, 125 S.

Ct. 1517, 161 L. Ed. 2d 454 (2005).  For *Rooker–Feldman* to apply, four conditions must be satisfied: "1) the case must be brought by a state court loser; 2) the injury alleged must be caused by the state court judgment; 3) the judgment must have been rendered before the district court proceedings commenced; and 4) the case must invite district court review and rejection of that judgment."[5]

The *Rooker–Feldman* doctrine is inapplicable.  Neither the plaintiffs' motion for summary judgment nor their complaint asks this court to overrule the state courts' decisions.  The probate court and the appellate court decided whether Riley was properly appointed trustee and whether Alpert and Riley breached fiduciary duties with respect to the Three Trusts.  The probate court entered final judgment on June 8, 2005, and the appellate court only considered acts occurring before June 8, 2005.  This court has exercised jurisdiction over claims arising from Riley's acts after that date.

The appellate court's decision establishes directed the probate court to determine on remand whether Riley was properly appointed to serve as trustee of the RAT, DAT, and [Children's Trust] until the issuance of a final mandate by the probate court, and the identity of each trust's successor trustee.  This court is not assuming jurisdiction over any trust claims that would involve overruling any decision by either the probate court or the appellate court.

## B.    The Probate Exception

The defendants argue that the probate exception bars this court from disturbing or affecting "possession of property that is directly subject to a quasi in rem trust administration presently

---

[5]  Allison B. Jones, Note, *The* Rooker–Feldman *Doctrine: What Does It Mean to Be Inextricably Intertwined?*, 56 DUKE L.J. 643, 674 (2006); accord *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 2010 WL 3035466, at *6 (3d Cir. 2010).

pending in state probate court." (Docket Entry No. 408, at 13). The probate exception is inapplicable. The plaintiffs do not ask this court to disturb trust property. The plaintiffs seek damages from the defendants, not the trusts, for breaches of fiduciary duties and torts. As the Supreme Court has held, "[t]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). The Supreme Court explained that "[w]idely recognized tort[s]" such as tortious interference with an expectancy of an inheritance or gift are outside the probate exception. *Id.* at 312; *see also Jones v. Brennan*, 465 F.3d 304, 307–08 (7th Cir. 2006) (a claim for breach of fiduciary duty is outside the probate exception); *Hamilton v. Nielsen*, 678 F.2d 709, 710 (7th Cir. 1982) (federal jurisdiction was proper in an action in which the plaintiff alleged that coexecutors of a decedent's estate was negligent in handling the estate's stock). This court is only exercising jurisdiction over such widely recognized torts. The probate exception to subject-matter jurisdiction does not apply.

## C. Abstention

The defendants argue that under *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); or *Younger v. Harris*, 401 U.S. 37 (1971) this court either lacks jurisdiction or should decline to exercise jurisdiction over claims relating to those Trusts asserted in this court.

### 1. *Princess Lida*

In *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939), the Supreme

Court stated that if suits dealing with the same property are pending in both state and federal court and "the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought, the jurisdiction of the one court must yield to that of the other."  The principle that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other" court applies to suits brought to administer trusts.  *Id.*

Courts disagree as to whether *Princess Lida* addresses jurisdiction or abstention.  *Compare Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993) (stating that "the Supreme Court in *Princess Lida* formulated its doctrine in terms of subject matter jurisdiction") *with Carvel v. Thomas and Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) ("The Supreme Court spoke of jurisdiction in *Princess Lida*, but never of subject matter jurisdiction . . . by invoking the importance of 'harmonious cooperation' between the federal and state courts, the Court indicated that the doctrine it was expounding was a rule of comity or abstention, rather than one of subject matter jurisdiction.").  Among those courts that view *Princess Lida* as an abstention-related doctrine, there is disagreement over whether *Princess Lida* has been subsumed within the multifactor discretionary *Colorado River* abstention criteria or whether *Princess Lida* is a distinct and independent abstention doctrine.  *Compare Carvel*, 188 F.3d at 86 ("[T]his is not to say that the *Princess Lida* doctrine may be lightly disregarded.  Although it is a principle of comity, in the nature of an abstention doctrine, the *Princess Lida* rule is no less binding on federal courts.") *with United States v. Fairway Capital Corp.*, 483 F.3d 34, 40 n.2 (1st Cir. 2007) ("We have treated the issue of a state court's in rem or quasi in rem jurisdiction as the first factor to be considered in the *Colorado River* abstention analysis, and as such, it is unnecessary to address abstention under *Princess Lida* separately.") *with*

17

*Kenner Acquisitions, LLC v. BellSouth Telecommunications, Inc.,* Civil Action No. 06-3927, 2007 WL 625833, at *3 (E.D. La. Feb. 26, 2007) (Although [*Princess Lida*] predated the *Colorado River* decision, the Supreme Court discussed its application and clearly enshrined its principles within the Colorado River rubric.").

The Fifth Circuit treats the *Princess Lida* principle as one of the factors considered under *Colorado River*.  The Fifth Circuit cases consider whether there is a *res* over which one court has assumed jurisdiction as one of the "six factors that may be considered and weighed in determining whether exceptional circumstances exist that would permit a district court to decline exercising jurisdiction" under the *Colorado River* abstention doctrine, not as a distinct and independent abstention or jurisdictional doctrine.  *See, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394-95 (5th Cir. 2006); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).  In describing the *Colorado River* factors, the Fifth Circuit has stated that "[t]he decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a 'mechanical checklist' of these factors, but on a 'careful balancing' of them, 'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'"  *Murphy*, 168 F.3d at 738  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  But, as explained below, in this case the result would be the same whether *Princess Lida* is applied as a "mechanical in rem rule" or as one factor under the *Colorado River* analysis.

Applying *Princess Lida* as a "mechanical in rem" rule to this case would not require this court to dismiss for lack of jurisdiction.  This federal case does not depend on, or involve exercising jurisdiction over, the *res* of the Three Trusts that were the subject of the state probate court trial and the appeal.  This action is for money damages, with one exception that does not implicate *Princess*

*Lida*.  The only exception is the request for declaratory judgment that Riley was not legally appointed the trustee of the CRUT.  That trust was not at issue in the state probate court proceedings.

This case is not, "in label or in fact, in rem or quasi in rem."  *Al-Abood*, 217 F.3d at 232 (finding that *Princess Lida* would not bar a federal suit involving a dispute over a *res* that was also the subject of ongoing state court litigation when the federal suit was strictly for money damages because this would not depend on or involve exercising jurisdiction over the res).  The *Princess Lida* doctrine does not apply to bar the trust claims from proceeding in federal court.

### 2.    *Colorado River*

As a general rule, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction in proper cases.  *Colorado River*, 424 U.S. at 817.  "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter."  *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop.*, 48 F.3d 294, 297 (8th Cir. 1995) (citing *Colorado River*, 424 U.S. at 813–14).  Federal courts may abstain from deciding an action to preserve "traditional principles of equity, comity, and federalism."  *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990).  Whether a federal court should abstain from hearing an action under one of the abstention doctrines, including *Colorado River,* is in the court's discretion.  *Murphy*, 168 F.3d at 738.

*Colorado River* abstention grants a federal court discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. However, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify the staying of the exercise of federal jurisdiction" under the *Colorado River* abstention

doctrine. *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297. And a federal court may not decline to exercise its jurisdiction "as a matter of whim or personal disinclination." *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (quotations omitted). As the Supreme Court explained, "[g]iven this obligation [to exercise jurisdiction given to federal courts], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention [under previously recognized doctrines]." *Colorado River*, 424 U.S. at 818; *accord Federated Rural Elec. Ins. Corp.*, 48 F.3d at 298 n.4 ("Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns."). A federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. Those "exceptional circumstances" must be such that "repair to the State court would clearly serve an important countervailing interest." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 14 (quotations omitted). This is true "even if diversity of citizenship is the only jurisdictional foundation." *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995).

Colorado River abstention only applies if there are parallel state and federal court proceedings. *See Brown*, 462 F.3d at 395 n. 7. Suits are parallel if they "involv[e] the same parties and the same issues." *Id*. (quotations omitted). "[I]t may be that there need not be applied in every instance a mincing insistence on precise identity of parties and issues." *Id.* (quotations omitted). Courts frequently define "parallelism" for purposes of *Colorado River* abstention in terms of

"substantially the same parties" litigating "substantially the same issues." *See, e.g., Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir.1995).  The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.  *TruServ Corp. v. Flegles, Inc*., 419 F.3d 584, 592 (7th Cir. 2005); *accord Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit).

If state and federal suits are parallel, the federal court must then evaluate whether there are "exceptional circumstances" that make abstention appropriate.  These factors include: (1) whether there is a *res* over which one court has established jurisdiction; (2) the inconvenience of the federal forum; (3) whether maintaining separate actions may result in piecemeal litigation; (4) which case has priority – not simply looking at which case was filed first; rather, focusing on the relative progress made in each case; (5) whether state or federal law controls; and (6) the adequacy of the state forum to protect the federal plaintiff's rights.  *See Murphy*, 168 F.3d at 738..  These factors are not a "mechanical checklist."  *Id.*

*Colorado River* abstention is not appropriate in this case.  The threshold requirement is not met because the state and federal court proceedings are not parallel.  *See Brown*, 462 F.3d at 395 n. 7.  This case involves different issues and parties than the state probate court case.  The probate court case did not involve the CRUT.  With the limited exception discussed above, the probate court

case did not resolve issues relating to transactions and events after the jury's verdict.  This court has already held that the plaintiffs are precluded from asserting in this federal case claims that were tried and decided by the probate court and reviewed on appeal in the appellate court.  The state court litigation did not and will not dispose of the issues raised in this federal case.[6]

Although the fact that the state and federal suits are not parallel means that this court need not decide whether "exceptional circumstances" exist to justify abstention, the record is clear that such circumstances are not present.  This federal court is not asserting jurisdiction over a trust *res* over which the state court is also exercising jurisdiction.  Abstention is not necessary to avoid conflicting court orders over ownership or disposition of the *res* of the Three Trusts.  *See Al-Abood*, 217 F.3d at 232 (holding that *Princess Lida* does not apply if the federal action "does not depend on or involve exercising jurisdiction over the res.").

The second factor examines the inconvenience of the federal forum to determine whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum."  *Moses H. Cone*, 460 U.S. at 19.  Relevant factors are the locations where the suits are

---

[6]  To the extent the plaintiffs seek to litigate whether Riley acted with authority as trustee of the Three Trusts after June 8, 2005, this court will abstain from ruling on that issue.  Riley's authority to act as the Three Trusts' trustee is currently before the probate court.  The appellate court reversed the probate court's determination that Riley was properly appointed trustee of the Children's Trust and rendered a decision that he was not; reversed the probate court's determination that Riley was properly appointed trustee of the RAT and DAT and remanded for further proceedings; and instructed the probate court to determine the successor trustee for each trust.  Those issues are before the probate court.  Instead, this court will hear the plaintiffs' claims that Riley breached fiduciary duties with respect to the Three Trusts after June 5, 2008.  Riley argues, and the appellate court recognized, that Riley has acted as trustee in fact of the Three Trusts since June 8, 2005.  The plaintiffs may assert their fiduciary duty claims based on Riley's contention that he has acted as trustee in fact.  Riley argues that as trustee in fact, he is entitled to an accounting at the end of the litigation by the probate court.  Assuming that Riley is correct, the plaintiffs may still assert claims that Riley breached fiduciary duties in this court because there is no indication, in either the probate court's or the appellate court's decision that whether Riley breached fiduciary duties as trustee in fact of the Three Trusts after June 8, 2005 is at issue in the state-court litigation.

pending, the location of the evidence or witnesses, and the availability of compulsory process. *Evanston Ins. v. Jimco, Inc.*, 844 F.2d at 1185, 1191 (5th Cir. 1988). There is no contention that the federal forum is relatively less convenient than the state probate court.

The next factor, and the consideration that was "paramount in *Colorado River* itself," is the "danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston*, 844 F.2d at 1192. "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Invs., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000). This case does not present a risk of piecemeal litigation. The "piecemeal litigation" factor does not weigh in favor of establishing "exceptional circumstances."

Consideration of the order in which jurisdiction was obtained "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Because this federal case involves issues different from those raised in the state court, this factor does not weigh in favor of abstention.

The fifth factor asks whether and to what extent federal law provides the rule of decision on the merits. The plaintiffs have asserted federal as well as state-law claims in this case. "The absence of a federal law issue does not counsel in favor of abstention . . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston*

23

*Ins. Co.*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26).  The fifth factor does not weigh in favor of abstention.

The sixth factor asks whether the state court action will adequately protect the rights of the federal court plaintiff.  This factor "can only be a neutral factor or one that weighs against, not for, abstention.  A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston*, 844 F.2d at 1193.  The sixth factor does not weigh in favor of abstention.

This court has jurisdiction over the trust-related claims in the third amended complaint and abstention is not warranted.

### 3.    *Younger*

Abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate when federal court jurisdiction would interfere with pending criminal, civil, or administrative state proceedings.  *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir. 1995); *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993), *cert. denied*, 510 U.S. 823 (1993).  To determine whether *Younger* abstention is appropriate, courts apply the following three-part test: (1) whether the dispute involves an ongoing state judicial proceeding; (2) whether important state interests are implicated; and (3) whether there is an "adequate" or "full and fair" opportunity to raise the federal claims in the state proceedings.  *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  If all three prongs of the test are met, then the federal court should abstain from hearing the case as long as bad faith, harassment, or other extraordinary circumstances are not involved in the case.

As set out above, this court is only exercising jurisdiction over the plaintiffs' claims that the

defendants breached fiduciary duties owed to the Three Trusts and committed torts after June 8, 2005.  Adjudicating the claims the plaintiffs have asserted does not interfere with any ongoing state judicial proceedings.

## IV.    Conclusion

Alpert's motion for partial summary, (Docket Entry No. 366), is granted in part and denied in part. It is granted as to the plaintiffs' claim that after June 8, 2005, Riley lacked authority to withdraw funds from the Three Trusts as compensation or to pay for litigation expenses incurred in prosecuting claims against Alpert after April 21, 2006, and to the plaintiffs' claim that Riley did not properly appoint himself trustee of the Three Trusts on January 10, 2010.  It is denied as to the plaintiffs' claims that Riley lacked authority to act as trustee after June 8, 2005 and that Riley breached fiduciary duties owed to Three Trusts after June 8, 2005.  Riley's motion to dismiss, (Docket Entry No. 440), is denied.

SIGNED on February 10, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

25