**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT ALPERT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-CV-3774 |
| | § | |
| MARK R. RILEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This case arises out of disputes over the alleged depletion of trust funds. The disputes have played out for more than a decade in the Texas probate and appellate courts and this federal court, with trials in both the probate court and this court. The defendant, Mark Riley, is a lawyer and an accountant. He worked for one of the plaintiffs, Robert Alpert, and for entities that Alpert owned or controlled, from June 1994 to October 1998, and served as trustee for trusts Alpert established for his sons, Roman Alpert and Daniel Alpert. The trusts at issue were the Roman Alpert Trust (the "RAT"), the Daniel Alpert Trust (the "DAT"), and the 1996 Children's Trust (the "Children's Trust") (collectively the "Three Trusts"). Alpert and his sons sued Riley and his former legal assistant, Dixie G. Meynier, in this court, based on actions relating to Alpert's finances and businesses, the Three Trusts, and Riley's involvement in providing confidential information about Alpert to the IRS in the hope of being paid.

In February 2011, the parties tried to a jury the plaintiffs' claims relating to Riley's actions as trustee. The jury considered whether Riley breached fiduciary duties owing to the Three Trusts after June 8, 2005. The jury found that Riley had breached his fiduciary duties and owed Roman and

Daniel Alpert $567,509.14 in damages for the RAT, $213,952.63 in damages for the DAT, and $50,365.00 in damages for the Children's Trust. (Docket Entry No. 462). The plaintiffs moved for entry of judgment, (Docket Entry No. 467), and Riley responded, (Docket Entry No. 476). Riley moved for judgment as a matter of law and for a new trial, (Docket Entry No. 468), and the plaintiffs responded, (Docket Entry No. 488).

Based on the motions and responses, the evidence presented at trial, the extensive record, and the applicable law, Riley's motion for judgment and a new trial, (Docket Entry No. 468), is denied, and the plaintiffs' motion for entry of judgment is granted in part and denied in part. The motion is granted as to the plaintiffs' request that this court enter judgment against Riley on the jury's finding of breach and award of damages, including prejudgment interest. The motion is denied as to the plaintiffs' requests that this court award additional damages against Riley and enjoin the state probate court's actions in the related litigation pending before it.

The reasons for these rulings are explained below.

**I.     Background**

The convoluted and overly long history of this litigation has been described in earlier opinions by both this court and the thorough and careful opinion of the state appellate court. Only a brief summary is needed here. This litigation began in 1998 in Probate Court Number Two of Harris County, Texas, in *In re: Roman Alpert Trust, Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust; Mark Riley, Trustee v. Robert Alpert, et al.* Riley sued Alpert as trustee of the RAT and DAT, alleging that he had sold stocks to trigger a tax loss and then caused the RAT and DAT to buy those stocks, resulting in the overpayment of taxes by the trusts. Riley alleged that Alpert breached fiduciary duties he owed to the trust beneficiaries. The beneficiaries

2

intervened in the suit and sought a declaration that Riley was not the trustee of the RAT or DAT, or alternatively, an order removing Riley as trustee because of his breaches of fiduciary duties as trustee. After Riley allegedly intercepted a tax-refund check issued to the Children's Trust, the putative trustee of that trust initiated a separate suit, seeking a declaratory judgment that Riley was not the trustee. The probate court consolidated that suit with the previously filed suit involving the RAT and DAT.

Cross-motions for summary judgment were filed on the issue of whether Riley was the properly appointed trustee of the Three Trusts. The probate court granted Riley's motion and found that he was properly appointed as the trustee for the RAT and DAT. The probate court initially denied Riley's motion as to the Children's Trust but later ruled that he was the properly appointed trustee of that trust as well. The probate court also granted Riley's motion for summary judgment on Alpert's liability for breaches of fiduciary duties and the amount of damages suffered by the Three Trusts. The probate court found that Alpert's actions on the stock transactions caused $2,000,000 in tax losses to the trusts. A jury trial was held in the probate court on additional allegations by Riley against Alpert and on Alpert's and the trust beneficiaries' claims that Riley should be removed as trustee for breaching fiduciary duties. On June 8, 2005, the jury found that Riley had breached fiduciary duties to the Three Trusts but awarded no damages. The jury also found that Alpert had breached fiduciary duties owing to the trusts' beneficiaries, but awarded no damages. The jury awarded Riley's attorneys $1,517,348 in fees for their work on behalf of the RAT and DAT and $57,038 for their work on behalf of the Children's Trust.

After a posttrial hearing, the probate court entered judgment on the jury's findings against Alpert, effective as of the date of the verdict. The probate court awarded $1,234,445.50 to Riley for

...

the RAT and for the DAT; attorneys' fees of $656,200.78; prejudgment interest; and additional attorneys' fees of $208,688.03 for each trust and for appellate fees in connection with the summary judgment findings against Alpert on the stock transactions. The probate court disregarded the jury's finding that Riley had breached fiduciary duties and its award of attorneys' fees to the beneficiaries. The final judgment terminated Riley's trusteeship for the Three Trusts but immediately reappointed Riley to serve as trustee pending the appeal. After the probate court's final judgment, Alpert and the beneficiaries moved for leave to post security to suspend Riley's reappointment as trustee pending appeal. The probate court denied the motion. Alpert appealed.

On July 3, 2006, the First Court of Appeals stayed the probate court judgment. That stay remained in effect throughout the appeal and was reaffirmed by the appellate court on June 29, 2007, and again on February 1, 2008. On October 9, 2008, in a thorough opinion, the appellate court reversed and rendered on most of the issues and reversed and remanded on a few. *Alpert v. Riley*, 274 S.W.3d 277 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). The Texas Supreme Court declined to review the case.

The appellate court essentially found that the probate court had misapplied the law and misunderstood the facts, and that Riley's conduct was improper and unauthorized. The Texas appellate court:

- reversed the probate court's ruling that Riley was properly appointed trustee of the RAT and DAT and remanded to the probate court whether Riley had ever been the properly appointed trustee of the DAT and the RAT;

- reversed the probate court's ruling that Riley was properly appointed trustee of the Children's Trust and rendered judgment that Riley was not, as a matter of law, properly appointed as trustee of that trust;

- reversed the probate court's judgment that Alpert breached fiduciary duties to the trusts and dismissed the claims for lack of subject-matter jurisdiction;

- reversed the probate court's judgment disregarding the jury's finding that Riley breached fiduciary duties, and rendered judgment consistent with the jury's verdict;

- reversed the probate court's judgment setting aside the attorneys' fees the jury awarded against Riley and to the beneficiaries and remanded for reconsideration;

- reversed the probate court's award of attorneys' fees to Riley and remanded for further proceedings on attorneys' fees in light of the court's determination of whether Riley was ever properly appointed trustee of the RAT and DAT;

- reversed the probate court's judgment approving trustee compensation for Riley and rendered judgment that Riley could recover no compensation for any work as trustee;

- affirmed the probate court's recognition that it had released Riley as trustee of any trusteeship, but reversed the appointment of Riley as successor trustee and rendered judgment "that any successor trustees for the RAT, DAT, and [Children's] trust are to be selected in accordance with the terms of the applicable trust instrument, after identification of the valid trustee for each trust"; and

- affirmed the probate court's denial of Alpert's request that he be permitted to post security to suspend Riley's reappointment as trustee pending appeal.

The appellate court also rendered judgment that Riley was not entitled to reimbursement for any attorneys' fees or expenses he incurred after April 21, 2006 in connection with prosecuting claims against Alpert. The court based this ruling on section 113.028 of the Texas Property Code, which provides:

> A trustee may not prosecute or assert a claim for damages in a cause of action against a party who is not a beneficiary of trust if each beneficiary of the trust provides written notice to the trustee of the beneficiary's opposition to the trustee's prosecuting or asserting the claim in the cause of action.

The beneficiaries had provided notice of their opposition to Riley's lawsuit on April 21, 2006, after section 113.028's June 17, 2005 effective date.

Alpert's claims before this court are limited to acts by Riley related to the Three Trusts after June 8, 2005, the date the probate court issued its final judgment. This court held a jury trial on

whether Riley breached fiduciary duties owing to the Three Trusts in February 2011. (Docket Entry No. 453). The jury found that Riley failed to prove by a preponderance of the evidence that he complied with the fiduciary duties he owed to the Three Trusts' beneficiaries, Roman and Daniel Alpert.

The plaintiffs presented evidence at trial that after the entry of final judgment by the probate court, Riley made trust disbursements totaling $327,057.05 from the Children's Trust; disbursements totaling $860,936.28 from the RAT; and disbursements totaling $527,379.77 from the DAT. (Docket Entry No. 467, Ex. 1, Plaintiffs' Trial Ex. 72). The disbursements from the Three Trusts included disbursements to attorneys Riley hired to pursue his claims against Alpert in the probate court, including to collect the judgment he had obtained against Alpert and to defend against the claims the beneficiaries asserted; disbursements Riley made to attorneys representing him in this litigation; disbursements to Riley both for trustee compensation and for professional services he allegedly provided to the Three Trusts; disbursements to companies Riley had a personal interest in, including T-3 Partners and Bishop Rock, L.P.; and disbursements to Patriot Managed Care Solutions ("PMCS"), a company with which Riley was associated. (*Id.*). At trial, the plaintiffs argued that all these disbursements were blatant self-dealing transactions that breached fiduciary duties Riley owed to the Three Trusts when he purported to act as trustee. Riley argued that the trust instruments authorized self-interested transactions and disbursements and the use of trust funds to pursue the claims and judgment against Alpert. At trial, the parties agreed to provide the jury with a stipulation describing the relevant events occurring in the state probate court and the Texas appellate court. The stipulation is attached as Exhibit A to this opinion.

This court's instructions to the jury noted that based on the Texas court rulings, Riley was not properly appointed trustee of the Children's Trust at any time and was not properly appointed as trustee of the DAT and the RAT after June 8, 2005. This court instructed the jury that Riley had held himself out and acted as a "trustee in fact" of the Three Trusts and asked the jury to determine whether Riley breached fiduciary duties owed to the Three Trusts as a trustee in fact. This court instructed the jury that it was to decide whether Riley "complied with his fiduciary duties . . . by his conduct with respect to the Trusts after June 8, 2005." This court's instructions stated that Riley's conduct at issue included: (1) making investments and loans and handling the funds received from investments and loans; (2) paying attorneys after April 21, 2006 (the date the trust beneficiaries sent notice to Riley instructing him not to pursue claims against Alpert); (3) paying himself out of the trusts for his work as trustee; (4) using trust funds to pay his office rent and overhead; (5) reporting or not reporting to the beneficiaries about transactions related to the Three Trusts; and (6) failing to make any disbursements to the trust beneficiaries. As to the trust funds disbursed to attorneys after April 21, 2006, the date the beneficiaries sent notice to Riley not to pursue claims against Alpert, this court instructed the jury that Riley "had no authority to use Trust funds to pay attorneys to continue defending Robert Alpert's appeal of the monetary award against him in probate court" and that "filing an abstract of judgment or otherwise securing the parts of the probate court's final judgment that awarded a monetary judgment against Robert Alpert was prosecuting claims for damages against Robert Alpert." (Docket Entry No. 456, Ex. 1, Jury Instructions, 7–8).

The jury found that Riley owed Roman and Daniel Alpert $567,509.14 in damages related to the RAT, $213,952.63 in damages related to the DAT, and $50,365.00 in damages related to the Children's Trust. (Docket Entry No. 462). The plaintiffs and Riley both filed posttrial motions. The

plaintiffs asked this court to enter judgment consistent with the jury's findings, including prejudgment interest. The plaintiffs also asked this court to award damages against Riley for all disbursements made from the Three Trusts during the period the appellate court found that Riley was not authorized to act as trustee. The plaintiffs also asked this court to enter judgment that Riley was without authority to pay himself attorneys' fees from the RAT and DAT because neither trust instrument authorized the payment of such fees and to enter judgment against Riley for any trust funds he withdrew after April 21, 2006. (Docket Entry No. 467). Finally, the plaintiffs have asked this court to enjoin the state probate court from "interfering with" this court's judgment.

Riley moved for judgment, or, in the alternative, for a new trial.[1] Riley's motion asserts numerous challenges to the jury instructions and also argues that the plaintiffs presented insufficient evidence showing that Riley breached fiduciary duties owed to the Three Trusts and that these breaches caused damage. (Docket Entry No. 468).

The parties' motions and arguments are discussed below.

## II.   The Legal Standards

### A.   Rule 50(a) Motion for Judgment

A motion for judgment as a matter of law is appropriate when a party has been fully heard on an issue and reviewing the entire record shows no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue. FED. R. CIV. P. 50(a); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). In evaluating the record, the court must make

---

[1] Riley also argues that this court should refuse to exercise subject-matter jurisdiction and not enter judgment under the *Rooker–Feldman* doctrine, the probate exception to federal court jurisdiction, and "*Younger*, *Colorado River*, and *Princess Lida*" abstention doctrines. Riley previously moved for summary judgment on this issue and this court denied his motion, stating its reasons in an opinion. (Docket Entry No. 449). Riley's subject-matter jurisdiction arguments are denied for the same reasons stated in that opinion.

8

all reasonable inferences for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are for the jury. *DP Solutions*, 353 F.3d at 427 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves*, 530 U.S. at 150 (quoting *Anderson*, 477 U.S. at 250–51). A court may grant a motion for judgment as a matter of law "only when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998); *see also Tex. Farm Bureau v. United States*, 53 F.3d 120, 123 (5th Cir. 1995). Although resolving disputed issues that turn on credibility determinations is for a jury, a court may render judgment as a matter of law when no reasonable jury could find the evidence credible. *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985); *see also Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002); *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

      **B.**    **Rule 59 Motion for New Trial**

Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Beckham v. La. Dock Co.*, 124 F. App'x 268, 270 (5th Cir. 2005) (per curiam) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985)). A new trial may also

be granted when there is "uncertainty or contingency to the finality of the jury's determination," *see Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967), or when the jury's inconsistent verdict cannot be reconciled, *see Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir. 1983).

**III.     Analysis**

    **A.     The Jury Instructions**

Riley argues that this court erred by: (1) instructing the jury that he had the burden of proof as to the alleged fiduciary duty breaches; (2) refusing to instruct the jury that a trust instrument may relieve a trustee from "duties, liabilities, and restrictions imposed upon a trustee by the Texas Trust Code, including those related to self-dealing and that the trust instrument may authorize the trustee to exercise powers in addition to those provided by the Texas Trust Code, including the specifically enumerated powers set forth in the trust indentures"; (3) submitting different types of conduct in a single jury question without placing the burden of proof on the proper party; (4) "refusing to inquire of the jury as to whether [Riley] acted in good faith as trustee" of the RAT, DAT, and the Children's Trust; (5) instructing the jury that Riley did not have authority after April 21, 2006 to use trust funds to pursue claims against Robert Alpert and to defend against claims by the beneficiaries; (6) instructing the jury that they could consider Riley's refusal or failure to pay the beneficiaries money from the trusts; and (7) failing to instruct on calculating damages. None of these objections supports modifying the jury verdict or granting Riley's motion for a new trial.

This court's instructions to the jury and the jury questions do not support the relief Riley seeks. The plaintiffs alleged that Riley disbursed funds from the Three Trusts: (1) to pay attorneys to pursue claims against Alpert over the beneficiaries' objections and without considering the beneficiaries' interests; (2) to pay attorneys for defending against the beneficiaries' counterclaims

in state court and their claims against Riley in this court; (3) to loan money to companies with which Riley was associated or had a personal interest including Bishop Rock, T3 Partners, and PMCS; and (4) to pay himself for trustee and other services. Under Texas law, "when a plaintiff alleges self-dealing by the fiduciary as a part of a breach-of-fiduciary-duty claim, a presumption of unfairness *automatically* arises, which the fiduciary bears the burden to rebut." *Cluck v. Mecom*, --- S.W.3d ----, 2011 WL 883781, at *2 (Tex. App.—Houston [14th Dist.] Mar. 15, 2011, pet. denied); *see also Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied) (citing *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963)). "Self-dealing means the trustee used the advantage of its position to gain any benefit for the trustee, other than reasonable compensation, or any benefit for any third person, firm, corporation, or entity, at the expense of the trust and its beneficiaries." *Grizzle v. Tex. Commerce Bank*, 38 S.W.3d 265, 281 (Tex. App.—Dallas 2001), *overruled on other grounds by Tex. Commerce Bank v. Grizzle*, 96 S.W.3d 240 (Tex. 2002). The allegations that Riley used trust funds to litigate against the trust beneficiaries' instructions and to defend claims asserted by the trust beneficiaries, to pay himself without authorization to do so, and to benefit his current and former business associates and himself, are all allegations of self-dealing. It was not necessary to separate each of the challenged actions into separate jury questions or give separate instructions for each because the same legal standard applied. The jury instructions were not improper.

Riley also argues that the jury instructions were erroneous because they did not include or reflect certain language in the trust instruments. The Supreme Court of Texas has found that it is reversible error not to instruct the jury of limitations to a trustee's fiduciary duties within a trust

instrument. *See Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 846–47 (Tex. 2005) (reversing a breach of fiduciary duty finding because the jury instructions did not describe the "contractual limitation[s] of [the trustee's] fiduciary duties"). Riley sought instructions on the specific investment authorizations[2] in the trust instruments for the Three Trusts. These provisions authorized Riley to make certain investments and disbursements otherwise barred by the Texas Trust Code. But these provisions did not relieve the Three Trusts' trustee of all fiduciary duties to the trusts.

The trust instruments did limit the trustee's fiduciary duties by limiting liability to "bad faith." Riley argues that for each trust, this court should have asked the jury whether he acted in good faith and without gross negligence. Riley emphasizes that the Texas Property Code allows the trust's settlor to limit the fiduciary duties owed by a trustee so that the trustee is only liable for bad faith or gross negligence. *See Tex. Commerce Bank*, 96 S.W.3d at 249 ("While the Trust Code imposes certain obligations on a trustee—including all duties imposed by the common law—the Trust Code also permits the settlor to modify those obligations in the trust instrument. Indeed, Trust Code section 113.059 broadly states that a settlor may relieve a corporate trustee from a 'duty, liability, or restriction imposed by this subtitle,' except for those contained in sections 113.052 and 113.053."). But these exculpatory clauses "do not relieve a trustee from liability for self-dealing as proscribed by applicable statues." *Cote v. bank One, Tex.*, No. 4:03-CV-296-A, 2004 WL 594114, at *4 (N.D. Tex. Mar. 16, 2004) (citing *Grizzle*, 96 S.W.3d at 249). The applicable statues, TEX. PROP. CODE § 113.052 and TEX. PROP. CODE § 113.053, bar a trustee from: lending trust funds to "(1) the trustee or an affiliate; (2) a director, officer, or employee of the trustee or an affiliate; (3) a relative of the trustee; or (4) the trustee's employer, employee, partner, or other business associate"

---

[2] (Docket Entry No. 468, Ex. 1, 4–7) lists these authorizations.

and from "directly or indirectly buy[ing] or sell[ing] trust property from or to: (1) the trustee or an affiliate; (2) a director, officer or employee of the trustee or an affiliate; (3) a relative of the trustee; or (4) the trustee's employer, partner, or other business associated" respectively. The plaintiffs alleged and produced evidence that all the disbursements from the Three Trusts to Riley or at his direction were within the categories of self-dealing proscribed by sections 113.052 and 113.053. The jury instructions were not improper.

Riley also objects that this court erred in instructing the jury that it could consider Riley's "failure to pay the beneficiaries from the Trusts." Riley emphasizes that the Three Trusts were discretionary trusts and argues that it was improper to instruct the jury to consider whether Riley refused or failed to make any disbursements, including at the beneficiaries' specific requests. Even in a discretionary trust, however, a trustee may be liable for abusing his discretion. *See duPont v. Southern Nat. Bank of Houston*, 771 F.2d 874, 887 (5th Cir. 1985) ("Because the Trust instrument does not contain explicit rules for allocating expenses between income and principal, but instead leaves allocations to the discretion of the Trustees, we review the Trustees' actions only for an abuse of discretion."). This court did not instruct the jury that if it found that Riley should have made disbursements to the trust beneficiaries, it should find that he breached fiduciary duties. This court did instruct that in analyzing whether Riley complied with his fiduciary duties, the jury could "consider" his failure to make any disbursements in determining whether the transactions he authorized as trustee breached his fiduciary duties. The objection is overruled.

Riley also argues that this court erred in instructing the jury that after "April 21, 2006, Mark Riley had no authority to use trust funds to pay attorneys to continue defending Robert Alpert's appeal of the monetary award against him in the probate court." This instruction is consistent with

the state appellate court's decision that under section 113.028 of the Texas Property Code, Riley was without authority to pursue litigation against them or Alpert after the Three Trusts' beneficiaries instructed him not to do so. Under Texas law, a trustee breaches fiduciary duties owed to trust beneficiaries when he uses trust funds "that do not confer a benefit upon the trust estate," including to pursue litigation that is adverse to the beneficiaries or contrary to their instructions. *Stone v. King*, No. 13-98-022-CV, 2000 WL 35729200, at *8 (Tex. App.—Corpus Christi Nov. 30, 2000, pet. denied). The instruction does not provide a basis to grant Riley's motion.

Finally, Riley argues that this court misinstructed the jury on calculating damages. Riley argues that this court's instructions that the jury could "consider the amounts of Trust expenditures made by Mark Riley, including investments or loans and funds received from them, that you have found breached his fiduciary duties, if any" should have instead stated a "legal measure of actual damages, such as the difference between expenditures made and expenditures that should have been made or the difference between the amount earned on an investment and the amount that could have otherwise been earned." (Docket Entry No. 468, at 10). In the only case Riley cites, *Wells Fargo Bank v. Crocker*, the Texas appellate court noted in a footnote only that a plaintiff must prove that breaches of a fiduciary duty caused injury. No. 13-07-00732-CV, 2009 WL 5135176, at *6 n.8 (Tex. App.—Corpus Christi, Dec. 29, 2009, pet. denied). This court instructed the jury that it could "award compensatory damages only for injuries that the Trust beneficiaries proved by a preponderance of the evidence were proximately caused by Mark Riley's allegedly wrongful conduct." (Docket Entry No. 456, Ex. 1, at 9). Under the authority Riley cites, this court's instruction was not improper.

    **B.**    **Evidence Sufficiency**

Riley argues that there was insufficient evidence to support the finding that he breached fiduciary duties owed to the Three Trusts' beneficiaries or that the alleged breaches damaged the trusts or the beneficiaries. The evidence presented at trial showed that after the probate court entered final judgment, Riley disbursed $193,996.17 to himself and $100,222.84 to his attorneys from the Children's Trust, after transferring $150,000.00 from each of the RAT and the DAT to the Children's Trust because only this trust allowed for trustee compensation. Riley also disbursed over $500,000.00 to his attorneys, $265,000.00 to Bishop Rock and T3 Partners, and over $60,000.00 to PMCS from the RAT, and disbursed over $300,000.00 to his attorneys, over $200,000.00 to Bishop Rock and T3 Partners, and over $15,000.00 to himself from the DAT. The plaintiffs alleged that each of these transactions constituted impermissible self-dealing or was contrary to the beneficiaries' directions. The jury was entitled to find that Riley's explanations for the disbursements were not credible. The jury was also entitled to find that these disbursements did not benefit the trusts and instead drained the trusts of assets to pay legal fees that did not generate income for the trusts and to make loans without security or to provide funds to companies or entities in which Riley had an interest. The evidence amply supported the jury's findings.

Riley's posttrial motions are denied.

### C. The Plaintiffs' Motion for Entry of Judgment

The plaintiffs ask this court to: (1) render judgment that Riley must repay the trusts for disbursements he made from the trusts during the period in which he was not trustee under the appellate court's decision; (2) issue a preliminary injunction to the state probate court ordering it not to interfere in this court's judgment; and (3) render judgment that plaintiffs are entitled to prejudgment interest.

The plaintiffs' first two requests are denied. The plaintiffs argue that because the appellate court held that Riley acted as trustee when he was not properly appointed, he should be ordered to repay any amount he disbursed from the Three Trusts during that period. The plaintiffs also argue that this court should order the state probate court not to "interfere" with this court's rulings. Whether Riley was properly appointed as trustee under the trust instruments when he made the disbursements was not at issue in the federal court trial. The issue the jury tried was whether Riley breached fiduciary duties after June 8, 2005 in his administration of the Three Trusts. The state probate court was tasked on remand to determine whether Riley was properly authorized to act as trustee of the RAT and DAT at any time before June 8, 2005. The parties have informed this court that they are currently litigating in the state probate court Riley's authority to act as trustee and his accounting for the trust assets. The plaintiffs have submitted excerpts of a transcript from the state probate court showing that the probate court intends to wait for this court's judgment before completing the accounting. (Docket Entry No. 467, Ex. 3). Because the trial and rulings in this court relate only to the alleged fiduciary duty breaches by Riley when he acted as if he was the trustee — the trustee in fact — and do not relate to his authority under the trust instruments or probate-court rulings to act as trustee, there is no basis to award damages based on the disbursements Riley made because they were "unauthorized" or to enjoin the state court from some undefined and speculative "interference" with this court's judgment.

The plaintiffs are entitled to prejudgment interest. "Prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date the defendant receives written notice of a claim; or (2) the date suit is filed." *State Farm Mut. Auto. Ins. Co. v. Norris*, 216 S.W.3d 819, 822 (Tex. 2006) (citing TEX. FIN. CODE § 304.104; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962

S.W.2d 507, 529 (Tex. 1998)). The parties agree that because the acts giving rise to this trial occurred before the complaint was filed in this case, the interest began to accrue after the filing of the complaint. Under Texas law, prejudgment begins to accrue on "the earliest date in the record showing that [the defendant] had written notice" of the claims. *Id.* The earliest date in the record showing that Riley had written notice of the plaintiffs' allegations that were tried to the jury is the plaintiffs' Second Supplement to Third Amended Complaint. That was filed May 28, 2009. Under *State Farm*, interest began to accrue 180 days after May 28, 2009.

**IV.     Conclusion**

Riley's motion for judgment and a new trial, (Docket Entry No. 468), is denied. The plaintiffs' motion for entry of judgment, (Docket Entry No. 467), is granted in part and denied in part. The motion is granted as to the plaintiffs' request that this court enter judgment against Riley and award prejudgment interest beginning180 days after May 28, 2009. The plaintiffs' motion is denied as to the requests that this court award additional damages against Riley and enjoin the state probate court against interference with this court's judgment.

SIGNED on August 2, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge